JOHN LEMIETTE AND ELIGH RICHARDS v. DANIEL STARR.

*Partnership—Dissolution—Acceptance of note in payment of firm
debt—Suit upon contract—Effect of prior action upon
void guaranty.*

1. After the dissolution of a copartnership, one partner has no right
   to take a note in his own name, and intended for his individual
   use, in settlement of a claim due the firm.

2. Plaintiffs, as subcontractors, sued defendant to recover for labor
   alleged to have been performed for him, and on the trial it
   appeared that they had brought suit for the same demand against
   the *other* party to the *main* contract, upon a guaranty of pay-
   ment, which was held void.
   *Held*, immaterial, and no defense to the present suit.

Error to Bay. (Green, J.) Argued June 16, 1887.
Decided June 23, 1887.

Assumpsit. Plaintiffs bring error. Reversed. The facts
are stated in the opinion.

*S. P. Flynn,* for appellants.

*Simonson, Gillett & Courtright,* for defendant.

CHAMPLIN, J. Plaintiffs sued defendant before a justice
of the peace, and declared verbally in assumpsit for a balance
due them from the defendant of $111.15, and interest from
April 1, 1883, for packing salt by the barrel, and placing the
same on the dock or in cars, during the years 1882 and 1883.
The plea was the general issue. The plaintiffs obtained
judgment before the justice, and defendant appealed to the
circuit, where, under the charge of the court, the defendant
had judgment.

There was no misjoinder of parties. The defendant testi-
fied in his own behalf that he first made arrangements with

Richards to pack the salt, and after one or two days he had a bargain with the two. It appears that defendant had a contract with the Keystone Company to manufacture salt for them and pack it, and he entered into an agreement with plaintiffs to pack the salt and put it on the dock for two and three-quarter cents for all salt that they put upon the dock. For salt shipped in bulk they were to have two and a half cents a barrel. These barrels were filled and weighed, and then emptied into the cars, but were not headed up. There can be no doubt, from his own testimony, that his contract was with both of the plaintiffs.

The contract between defendant and the Keystone Company was entered into in the spring or early summer of 1882, and defendant continued to manufacture the salt at the Keystone Company's block until December of that year, and regularly paid plaintiffs for packing until that time, when defendant claims that he threw up his contract with the Keystone Company, and ceased to manufacture any more salt for them. At this time there was a large quantity manufactured which had not been packed, and the packing of which was covered by defendant's contract with the Keystone Company.

Defendant did not prove, and it is not claimed, that the Keystone Company released defendant from his contract to pack the salt he had manufactured. Defendant testified that he did not notify plaintiffs that he had thrown up the job, but in his talk with them he gave them to understand that such was the fact, and that they so understood him. He did no more work there; and neither did plaintiffs, until about March 1, 1883, when they had a conversation with a Mr. Johnson, who was in some way connected with the Keystone Company, but in what capacity does not distinctly appear from the record before us, and he requested plaintiffs to keep on packing the salt which had been made by defendant, saying that his contract had not yet been performed,

and also saying that they should be paid for doing so; that he kept back three-quarters of a cent, and that would be pretty near enough to pay for packing what was left.

Upon this assurance plaintiffs went to work, and the Keystone Company paid them for the month of March, but refused to pay for the month of April. The amount then due plaintiffs was the sum of $111. They brought an action against the Keystone Company, but were defeated, as we gather from the record, because the debt was the defendant's, Starr's, and not theirs, and their verbal guaranty was void.

Upon the trial of this suit against the Keystone Company, Mr. Starr was a witness, and testified that plaintiffs were at work for him; and afterwards he recognized his liability to pay plaintiffs for the work done, and offered to give them his note therefor, but refused to give security upon his homestead. It does not appear that he ever denied that the work was done for him, or his obligation to pay the plaintiffs therefor, until this suit was commenced. The evidence fully establishes the fact that the plaintiffs were partners in the business of packing salt for defendant, and that defendant was fully aware of the fact. The debt he owed to them was a partnership debt. They had requested him to pay it on several occasions, and, while promising to do so, he has never fulfilled the promise.

Soon after the suit against the Keystone Company was ended, the plaintiffs, being both together, requested defendant to give them security upon his house and lot. This he refused to do, but offered to give them his note, which they refused to take; and so the matter ran on until March, 1886, when, as defendant testifies, he had several conversations with Mr. Lemiette, who asked him for the money, and he told him that he could not pay him, and he then asked him to give him his note, said he wanted it for the balance due him and Richards, and he told him that he would give it to him for a year; that Mr. Lemiette wanted

the note given in his name; that he was claiming all the time that Richards had got most of his pay, and there was nothing coming to him ; and so he gave him the note in his individual name.

The note reads as follows:

"WEST BAY CITY, March 6, 1886.

"One year after date I promise to pay to the order of John Emiat one hundred and eleven dollars, at ———, without interest.

"D. C. STARR."

Mr. Lemiette was of French descent, and could neither read nor write the English language. He afterwards took the note to a Mr. Le Blants, and asked him to read the paper, and he told him it was a note for a hundred and some odd dollars,—a year note. Mr. Lemiette kept the note four or five days, and then handed it to his attorney in this suit. Soon thereafter this action was commenced. The note was tendered back, and was present at the trial ready to be surrendered up.

Mr. Lemiette had no authority, as a partner of Mr. Richards, to take the note, and extend time of payment one year without interest. The partnership was only in that particular transaction, and that had transpired nearly three years previously. The partnership relation did not authorize Lemiette, as agent of Richards and himself, to take a note in his own name intended for his individual use. It was outside of the scope of the partnership business, and beyond the authority of a partner in closing up the affairs of the partnership. He could not, by collusion with the debtor of the firm, obtain a security in his own name, and for his own benefit, to the exclusion of his partner.

The court below erred in charging the jury that Mr. Lemiette had an implied authority to act for the firm in taking this note, and that it was binding on the firm, if they found it was taken in good faith as a settlement of the mat-

ter, and, under the agreement at that time, could be extended for one year, and that plaintiffs had no cause of action until the time named in the note had expired.

He also erred in charging the jury that it was for them to determine in this action whether the work done for which this action is brought was done by plaint.ffs for the Keystone Company or for defendant.

The case shows plainly enough that the claim made by the plaintiffs against the Keystone Company was based upon the guaranty or assurance of payment made by Mr. Johnson, and the court erred in charging the jury that their suit against the Keystone Company,—

"In its results, fully shows this: that they claimed at that time that the Keystone Company was liable to them for the work; in other words, they could not recover, unless they claimed and insisted that they had done that work for the Keystone Company, and not for the defendant."

The issue presented in this case was whether defendant employed plaintiffs to pack the salt which he manufactured under his contract with the Keystone Company, and it was immaterial that they had sought to recover for the work from the Keystone Company upon a guaranty of payment, which the court charged the jury was void.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.