MOSBY et al. v. UNITED STATES, for Use of PRINTY & JONES.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1912.)

No. 2,167.

1. COMPROMISE AND SETTLEMENT (§ 17*)—CONCLUSIVENESS.

Where a dispute had arisen between a federal contractor and his sureties and certain subcontractors, and they undertook to settle the same, many different items being decided and disposed of on an ample consideration, full effect should be given to the settlement according to its terms.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 66–74; Dec. Dig. § 17.*]

2. COMPROMISE AND SETTLEMENT (§ 12*)—SETTLEMENT AGREEMENT—CONSTRUCTION.

Where a compromise settlement agreement between a federal contractor and subcontractors provided that it should include all debts due from the subcontractors or either of them to the contractor, except the bills of W. and brother, and except cash furnished the subcontractors during November and December, 1908, such contract covered per diem expense of the contractor's teams and freight on the contractor's outfit which he was compelled to transport to the works and to return therefrom by reason of the subcontractors' failure to put on additional teams

as required by the engineer officer in charge, though the return expense was not liquidated at the time of the settlement; such claims not being a part of the bills of W. and brother.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 54–74; Dec. Dig. § 12.*]

**3.** DAMAGES (§ 120*)—BREACH.

Where a federal contractor was required to take over the work let to subcontractors and finish the job, because of the subcontractors' breach of contract, the contractor's measure of damages as against the subcontractors was the difference between the contract price under the subcontract and what it actually cost the contractor to do the work.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. § 120.*]

**4.** DAMAGES (§ 120*)—BREACH.

Where a federal contractor was required to resume a part of the work let to subcontractors and finish the same, he could not recover from such subcontractors expenses incurred in taking over and finishing the work, in the absence of allegation or proof that the work so done cost him more than the price he had contracted to pay the subcontractors, or that he was damaged by their breach.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 120.*]

**5.** COMPROMISE AND SETTLEMENT (§ 24*)—PARTICULAR ITEMS—QUESTION FOR JURY.

Evidence *held* to authorize a member of a firm, to which certain public improvement work had been sublet, to have submitted to a jury the question whether the contractor should account for $500 received from a note of such member, or whether the contractor should have credit for the amount so paid to the other member of the firm for its benefit.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 95, 96; Dec. Dig. § 24.*]

**6.** PARTNERSHIP (§ 143*)—PAYMENT TO PARTNER—INDIVIDUAL USE.

Where a federal contractor sublet a part of the work to a firm, receiving the proceeds of a note of one of the firm to be applied to the firm's benefit, and thereafter paid the amount to the other member of the firm for his individual use, the contractor would not be entitled to credit for such payment on an accounting with the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 229–232, 233½; Dec. Dig. § 143.*]

**7.** PARTNERSHIP (§ 143*)—FUNDS—PAYMENT.

Where a contractor pays money to a member of a firm holding a subcontract as and for a payment or advance to the firm, and without reason to believe that the partner receiving the money is not obtaining it for a legitimate partnership purpose, he is entitled to credit therefor as against the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 229–232, 233½; Dec. Dig. § 143.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Action by the United States, for the use of Printy & Jones, against W. L. Mosby and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Mosby took from the United States a contract for doing certain levee work on the Mississippi river, and Bruce and Cummings became his sureties on his statutory bond that he would pay all sums for which he became indebted for labor or materials on the job. The contract called for an estimated 175,000 cubic yards of filling at a price of 22 cents per yard, and reserved to the

engineer officer in charge power to determine how many men and teams should be kept employed. Having done part of the work, Mosby, in July, 1908, sublet the remainder, estimated at 150,000 yards, at a price of 19 cents per yard, to Printy & Jones. Mosby agreed to advance to Printy & Jones $1,500 to be used to pay their debts at their existing location and to pay freight on their outfit to St. Louis on its way to the new job. They were interested in their partnership in the proportions of two-thirds to Printy and one-third to Jones. Printy gave Mosby his note for $1,000, and Jones gave his note for $500; each note being secured by an individual mortgage. Mosby discounted these notes at a bank, and gave Printy & Jones $1,000 which was used for the debts as agreed. What Mosby did with the $500 is in dispute.

After Printy & Jones had proceeded some time with the work, the engineer officer notified Mosby he must put on 25 more teams. Mosby notified Printy & Jones to the same effect. They did not immediately comply. Mosby then shipped his own outfit of teams to the work, and took up the building of a part of the levee and finished the same so that the entire job was completed, within the time limit, December 31st.

Supplies of all kinds had been furnished to the jobs, and cash expenses of all kinds had been advanced and paid, by Walsh & Bro., of Memphis, who made the charges to Printy & Jones after they took on the work, but who looked ultimately to Mosby for their pay. When the work was about done, disputes arose between Printy & Jones and Mosby, and they attached Mosby's outfit. Thereupon a conference was held and a settlement reached. This settlement contract was put in writing, December 14, 1908, and its presently material parts are as follows:

"The mortgage of said Jones to said Mosby for five hundred dollars is to be kept out of the amount due Printy & Jones, and the records promptly satisfied upon receipt of government estimate. * * * This settlement includes and specifies all the debts due from Printy & Jones, or either of them, to W. L. Mosby, except the bills of * * * Walsh & Bro., of Memphis, Tennessee, and except cash furnished said Printy & Jones by W. L. Mosby during the months of November and December, 1908."

About January 1st, Mosby received from the United States the entire compensation, credited Printy & Jones with the agreed 19 cents for the amount of work which they had done, charged them with the various advances and supplies, and rendered them an account showing that they were indebted to him in the amount of $148. The portion of the work done by him and its cost and the amounts received therefor did not enter into this account, except as hereafter stated. Printy & Jones questioned some of the small items not now material, but denied liability upon three items, or classes of items, with which they had been charged on the account: (1) The $500 received through Jones' note, which Jones denied had ever been advanced to the partnership; (2) the freight cost of shipping Mosby's teams from their location to the levee work, and back again, in September and December, amounting to $1,440; and (3) a per diem charge for the teams while so being shipped back and forth, amounting to $1,484. Thereupon Printy & Jones brought this suit, in the name of the United States, but for Printy & Jones' benefit, against Mosby and his sureties. They defended upon the basis of Mosby's account rendered. Under the instructions of the court upon the various questions involved, it is evident that the jury allowed to Mosby the claimed balance of $148 and allowed to Printy & Jones the items just named, rendering a verdict in favor of Printy & Jones of $3,276, upon which verdict judgment was entered, and to review which Mosby and his sureties bring this writ of error.

Caruthers Ewing, for plaintiffs in error.

R. H. Stickley (Bacon & Stickley, on the brief), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] The record indicates no reason for not giving full effect according to

its terms to the settlement agreement of December 14, 1908. A dispute had arisen. Mosby and his sureties, on the one side, and Printy & Jones on the other, undertook to make a settlement of the dispute. Many different items were recited and disposed of, and there was ample consideration.

[2] The items for per diem of teams and freight upon outfit amounted to $2,924. About half accrued, if ever, as debts from Printy & Jones to Mosby, in September. On December 14th, the remainder, for the return per diem and freight, if we may judge from the dates upon the account rendered, had not been liquidated. However, the coming expense and the return expense were of the same class; they were both elements of the damage accruing to Mosby because of Printy & Jones' contract default; and we think these charges, as an entity, were, on December 14th, fairly within the descriptive phrase "debts due from Printy & Jones to W. L. Mosby," and that their present assertion is therefore barred by this contract, unless they are within the exception, "bills of Walsh & Bro." It is clear and, indeed, is conceded, that the items for per diem cannot be brought within this exception, because Walsh & Bro. had nothing to do with these items. The freight had been paid by Walsh & Bro. in September, and was paid by them in December, and was later repaid to them by Mosby. Whether this phrase, "bills of Walsh & Bro.," as used by the parties at the time, was intended to cover, and so did cover, their bills against Mosby for what they did for him and charged directly to him, or was intended to be confined to their bills against Printy & Jones for which they looked to Mosby for pay, will be a question of fact for the jury to decide, if there should be another trial and if the pleadings shall be reshaped so as to permit the question to arise.

[3, 4] Upon the present record, these questions are immaterial, because Mosby can have no claim against Printy & Jones for the expenses incurred by Mosby in taking on and finishing up the job, except upon the theory that Printy & Jones breached their contract with him, whereby he was compelled to do the work himself, and that his measure of damages is the difference between his contract price with Printy & Jones and what it did actually cost him to do the work. Upon this theory, he should charge Printy & Jones with the entire cost to him of completing the work, and should credit them with 19 cents per yard out of the price which he received from the government. He did not shape his conduct, his pleadings, or his proofs according to any such theory. The record does not show what the total cost to Mosby was, but does show he appropriated to himself the entire price, 22 cents per yard, received for the part of the work which he did. There is nothing anywhere in the record to indicate that the work cost him more than 19 cents per yard, or that he was damaged at all by any breach of the contract which Printy & Jones may have committed. Under this state of the pleadings and proofs, Printy & Jones would have been entitled to a positive instruction that Mosby could not retain or set off any portion of this sum of $2,924. It therefore becomes unnecessary to consider the errors assigned by counsel for Mosby on this branch of the case. He suffered no prejudice.

[5] The question whether the $500 matter was open to litigation in spite of the compromise settlement is more complicated, but we cannot say that there was no issue upon this matter upon which plaintiffs had a right to go to the jury. By that contract, Jones agreed to pay the mortgage which he had given to secure the $500 note. After receiving the government money· on finishing the ·contract, Mosby paid to the bank $513, the amount due upon this note which he had discounted at the bank. This amount he repaid to himself by charging the same to Printy & Jones in the account rendered which was the basis of this verdict, and that charge was not directly disturbed by the verdict. It therefore follows that Jones' agreement to pay the note has been performed, and that, in the matters which are now to be stated, there is no tendency to vary or modify this part of the terms of this written agreement.

In this account rendered, Mosby gave Printy & Jones no credit for the $1,000 which he had received in July on discounting Printy's note, nor for the $500 which he had received at the same time as the proceeds of Jones' note. He must excuse the failure to make these credits by the fact that he has not charged against them in the account the same $1,000 paid to them at their former location, nor the same $500, paid, as he says, to Printy at St. Louis. The payment of the $1,000 is conceded and so neutralizes the omitted $1,000 credit. As to the $500, Jones (who, at the time of the trial, seemed to be the active party plaintiff, Printy having gone away) claims, in terms or by necessary implication, that it was agreed Mosby should use this retained $500 as if it had been a special deposit with him by the partnership for the purpose of paying certain freight bills amounting to about that sum ·($480.90) ; that such bills were paid by Mosby and stand charged to Printy & Jones in the account rendered ; that at the time of the December 14th contract he (Jones) supposed Mosby, in his final account, would charge himself with the $500 received and take credit for this freight paid; that he did not know that any dispute or question existed on this point; and that he never heard of the alleged payment to Printy until he heard Mosby's testimony on the trial. If Mosby's theory is correct, and if he did pay this $500 to the partnership through Printy, that is an end of the question, and he does not need to depend on the December 14th contract. If such payment had not been made, then the partners had a right to assume that Mosby would not, in stating the Walsh bills, take credit·for this $480 freight without charging himself with the $500 he received. Not only was Mosby's liability to account for the $500 he received not one of "the debts due from Printy & Jones, or either of them, to W. L. Mosby," but it cannot be supposed Printy & Jones were settling a controversy which they did not know existed.

We conclude, then, that the settlement contract did not prevent Jones from having submitted to the jury the question whether Mosby should account for the $500 he received from Jones' note, or, what is the same thing, whether Mosby should have credit for the $500 he claims to have paid Printy.

[6] Upon this subject it is clear that there was a general partnership and that a loan or advance to either partner for the partnership,

or if Mosby had reasonable belief that it was for the partnership, was, prima facie, a loan to the partnership. If, however, it was true, as was suggested to us by counsel on the argument, that this money was paid to Printy for his individual use, and with knowledge by Mosby that it was asked and received for Printy's then pressing personal needs, and in a way that would make it a fraud by both of them to charge it to the partnership, Mosby would not be entitled to such credit; and, as bearing on such question of fact, it will be material, if true, as Jones claims, that there had been this special agreement by Mosby to retain this $500 and use it himself to pay this freight for the partnership, as this would have some bearing on the good faith of Mosby's claim that he supposed Printy desired the money for that same purpose.

[7] The jury was charged, in effect, that Mosby was not entitled to credit for this item, if it was paid Printy for any other purpose except to pay this freight. This was too narrow a statement of the rule of partnership authority, and gave too much force to the disputed claim that the money had become a specific fund which could be devoted to a specific purpose only. If Mosby paid Printy the $500, as and for a payment or advance to the partnership of Printy & Jones, and having no reason to believe that Printy was not getting it for some legitimate partnership purpose, he should have the credit.

For this error, to which exception was noted, and upon which an assignment is based, the judgment must be reversed, and a new trial ordered, unless the plaintiffs below see fit to remit $500 from their judgment, as of the date of the judgment. If within 30 days they file here the certificate of the clerk of the District Court that such remittitur has been there filed, then such judgment will be affirmed. In either event, plaintiff in error will recover the costs of this court.