74 So.2d 250

**AYERS et al. v. AYERS et al.**

**HOUSING AUTHORITY OF BIRMING-
HAM DIST.**

v.

**AYERS et al.**

**6 Div. 548, 548-A.**

Supreme Court of Alabama.

June 17, 1954.

Rehearing Denied Aug. 30, 1954.

S. Palmer Keith, Jr., Birmingham, for appellants.

Spain, Gillon, Grooms & Young, Ralph B. Tate, Birmingham, for cross-appellant and appellee Housing Authority.

Jas. H. Bradford, Birmingham, for appellees.

PER CURIAM.

The appeals are from a final decree in equity, in which the court adjudged that the complainants were entitled to a vendors' lien upon a certain house and lot in Jefferson County which had been purchased by the Housing Authority of the Birmingham District. The property was originally owned by T. M. Ayers and was his homestead when he died on January 19, 1932. He left surviving his widow, the complainant Mary Tyson Ayers who was his second wife, and two sons by a former marriage. They are the only heirs necessary here to be mentioned. The two sons were married. The complainants are the widow and one of the sons, William Ayers. The Housing Authority filed a cross bill, to which we will later refer, and to which Louis was made a party.

After the death of T. M. Ayers his widow, Mary Tyson Ayers, lived in the house for about two years and then moved into another house which she had obtained by inheritance from her first husband. William and his wife lived in another state. Louis and his wife remained in possession of the house and lot in question after Mary Tyson Ayers left it.

By deed dated January 14, 1951 a conveyance was made by Mary Tyson Ayers, the two sons William and Louis Ayers and their respective wives of the property here involved to the Housing Authority of Birmingham District, reciting a consideration of $2,250. The deed was sent by the Housing Authority to William who, with his wife, executed it and sent it on to his stepmother for execution, which she did. Louis and his wife executed the deed and delivered it to the Housing Authority and received the amount of $2,250 in full payment of the purchase price, investing the money so collected in another lot. Louis removed the house from the lot sold to the Housing Authority and erected it on the lot purchased and moved into it.

No part of the consideration was paid to either the complainant Mary Tyson Ayers or the complainant William Ayers. There was no allegation or showing made that there was an administration on the estate of T. M. Ayers, and no showing or claim that there was a dower or homestead interest asserted or set apart to the widow.

Louis' wife, whose name is Mary Willie Harris Ayers, is also made a party to the cross bill. She claims to have been paying the taxes on the lot since she redeemed it from a tax sale in 1939, and makes a claim of adverse possession insofar as the rights of complainants, Mary Tyson and William Ayers, are concerned. But our view of the situation makes that question here unimportant.

The bill does not allege that the Housing Authority made any agreement with the complainants or anyone of them, other than is shown by the deed itself. On the other hand, it had a contract with Louis and his wife for the purchase of the property from them, agreeing to pay them the consideration named of $2,250 which was paid. It is not contended that the Housing Authority made any express agreement or any other sort of agreement to pay any consideration to the complainants.

The trial court undertook to and did ascertain that the complainants Mary Tyson Ayers and William Ayers, each separately, were entitled to a proportionate part of the purchase price of the $2,250, and that Mary's interest was $627 and William's interest was $811.50.

The cross bill of the Housing Authority in substance is in the alternative that if it is liable to the complainants for a part of the $2,250, Louis and his wife, Mary Willie, should be held indebted to it in the amount of the liability fixed against it in favor of the complainants in the original bill and prays that a decree be entered establishing a lien or trust in behalf of the Housing Authority on lots three and four, which had been purchased by Louis with the proceeds of the sale of the lot which was made to the cross complainant, and that said lien be enforced in a proper manner.

The trial court having adjudged and decreed that the complainants are entitled to a vendors' lien against the Housing Authority, granted relief to the Housing Au-

thority on the cross bill and declared a lien in favor of it on said lots which Louis had purchased as stated above.

Separate appeals have been taken to this Court. One by the Housing Authority from the decree rendered against it establishing the vendors' lien above mentioned, and the other taken by Louis and his wife Mary Willie from the decree which granted relief on the cross bill of the Housing Authority. The assignments of error, respectively, are as indicated by the respective appeals taken. Both cases were submitted as one and so considered by this Court.

We will first consider the assignments of error of the Housing Authority, and if the decree against it is reversed there will be no occasion for relief on the cross-bill of the Housing Authority. But since we are of the opinion that the decree should be reversed on the appeal of the Housing Authority that will make the cross bill functus officio so far as the present appeal is concerned.

■ The principle is fully established in this State that a vendor's lien does not exist unless there is a "debt due to the complainant contracted in the purchase of land, still unpaid, and which the purchaser, either at the time or at some prior date, was liable to pay as primary debtor, without condition". Thomason v. Cooper, 57 Ala. 560; Scheerer v. Agee, 106 Ala. 139, 17 So. 610; Hood v. Christopher, 214 Ala. 603, 108 So. 519; Sims v. City of Birmingham, 256 Ala. 540(6), 55 So.2d 833.

■ It is of course necessary in the establishment of a vendor's lien that the promise to pay the purchase money be made to the grantor complaining and seeking to enforce the lien. It is usually sufficient without more appearing, in order to make a prima facie case, to introduce the deed reciting the amount of the consideration although it is recited as having been paid, and to prove that it was not paid. The burden then falls upon the purchaser seeking to defeat the lien to show some reason why it does not exist. Daniel v. Daniel, 214 Ala. 406, 108 So. 42. Of course, if he can show

that the purchase money was paid that defeats the lien and that is what the Housing Authority here undertook to do, and did what we think had that effect in paying to Louis (one of the joint grantors) the full consideration of $2,250. The Housing Authority is not interested in any controversy between the complainants and Louis and his wife with respect to a distribution between them of said sum of $2,250.

The evidence shows that the complainants had or asserted an interest in the property, although Louis and his wife, Mary Willie, claimed they had acquired ownership by adverse possession. They also claimed that the widow, Mary Tyson Ayers, had lost her dower right by the failure to assert it within the statutory period, Title 34, section 63, Code, and had abandoned it as a homestead and, therefore, she had no interest in it whatsoever. The claim of those two complainants to a part of the purchase price arises from their claim of an interest in the lot itself, and their joint conveyance with Louis to the Housing Authority. They all five united in a single deed reciting a consideration of $2,250 and that it had been paid to them all. There being no agreement between the complainants and the Housing Authority, other than as represented and shown by the deed itself, their claim to a share of the purchase price which was paid to Louis, is that they were joint grantors with him and therefore joint owners of the purchase price paid by the Housing Authority.

■ So we come to the question of whether or not the payment to Louis by the Housing Authority discharged the obligation which it owed to the joint owners. Upon that principle we find authorities in this State which fully support the theory that a debtor may effectively pay and discharge in whole or in part his debt by payment to one of the two or more joint owners thereof. Bank of Guntersville v. United States Fidelity and Guaranty Co., 201 Ala. 19, 75 So. 168; Peck v. Lampkin, 200 Ala. 132, 75 So. 580.

This principle has been applied to joint vendors, such as we have illustrated in the

instant case. 66 Corpus Juris 1007, section 744, note 1; Waters v. Travis, 9 Johns (N.Y.) 450.

In Wood v. Montgomery, 60 Ala. 500, it is said that: "In cases where there has not been a joint letting of lands held by tenants in common, either tenant may maintain a separate action for his proportion of the sum due for use and occupation, or for a trespass or wrong done to the freehold or possession". See, also, Southern Railway Co. v. Hayes, 198 Ala. 601, 73 So. 945; Gore v. Gore, 250 Ala. 417, 34 So.2d 580; Ruffin v. Crowell, 253 Ala. 653, 657 (1 and 2), 46 So.2d 218.

■ It is well settled that one tenant in common can maintain a suit against a stranger to the rights of the cotenants and recover possession of the land from him for the benefit of them all. Jackson Lumber Co. v. Butler, 244 Ala. 348, 13 So.2d 294; Lathem v. Lee, 249 Ala. 532, 32 So.2d 211; Hooper v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549.

■ The following principle is declared in Thompson v. Thompson, 107 Ala. 163 (2), 167, 18 So. 247, 249:

"It is the well-settled doctrine of courts of equity that if a tenant for life and the remainder-man or reversioner in fee unite in a sale and conveyance of the estate, not by agreement providing for an apportionment of the purchase money between them, a court of equity will intervene, and apportion it according to their respective interests in the land at the time of the sale. 1 Story, Eq. (12th Ed.) § 488a; Foster v. Hilliard, [C.C.], Fed.Cas.No.4,972. 1 Story [77], 99. In the case cited, the subject was considered at large, and the manner of ascertaining the interest of the tenant for life is clearly described. The equity exists without regard to a contract or agreement between the parties. Contract or agreement may displace it, but it is not essential to its creation. It rests upon the presumption that, by the sale and conveyance, the parties did not intend the destruction, alteration, or change of their respective rights and interests in the land, as between themselves, nor the mere conversion of the land into money; but that they intended the purchase money should stand in the place of the land, and that they should share therein according to their rights in the land at the time of the sale. The doctrine prevails only in courts of equity, and is capable of administration by them only."

■ But such a principle is not operative to require the Housing Authority to pay the purchase price a second time. When Louis, having possession of the deed executed by them all jointly, delivered it to the Housing Authority it had the right to discharge its liability for the purchase price by paying the full amount of it to Louis. Equity will then, upon a proper application, apportion the fund among the joint grantors according to their respective interests in the land and follow its investment into other property if there is need to do so and properly asserted. But it takes an original bill in equity to accomplish that result.

■ The instant bill was directed solely at the Housing Authority and sought to have it responsible for complainants' interest in the purchase price as if it had not been paid. The equity which complainants are entitled to enforce is against Louis and not the Housing Authority, and is for an apportionment of the fund which he collected with a lien on its reinvestment, not for a vendors' lien. On such a bill as here set up an apportionment is not available. To amend by making it one for an apportionment would be a departure from its purpose and a complete change of causes of action. Eatman v. Nuckols, 251 Ala. 544(3), 38 So.2d 494; Alabama Terminal & Improvement Co. v. Hall & Farley, 152 Ala. 262, 44 So. 592. An amendment to that effect would not be permissible, and no other amendment seems available which would be consistent with the facts proven. The decree granting relief on both the original and cross bill should be reversed and one here rendered denying relief on both of them and dismissing them.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court while serving on it at the request of the CHIEF JUSTICE, under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MERRILL, JJ., concur.