254 So.2d 175

Vernease BROOKS, Individually and. as Administratrix of the Estate of James C. Brooks, Deceased

v.

Loyd WARD and Hazel B. Ward.

6 Div. 844.

Supreme Court of Alabama.

Sept. 30, 1971.

On Rehearing Oct. 28, 1971.

Walter Joe James, Jr., Haleyville, Norman W. Harris, Decatur, for appellant.

Arthur Fite, Jr., Hamilton, Hobbs, Copeland, Franco & Screws, Montgomery, for appellees.

HARWOOD, Justice.

In the proceedings below Vernease Brooks individually, and as Administratrix of the estate of James C. Brooks, deceased, filed a complaint at law on 20 July 1968, on a promissory note made by Loyd Ward and Hazel B. Ward on 15 September 1960. A jury trial was demanded.

The note was payable to James C. Brooks and Vernease Brooks and was in the amount of $10,500.00, payable $140.81 on the first day of each month after the date of the note.

On motion of the defendants the cause was transferred to Equity. There Loyd Ward and Hazel B. Ward filed a complaint in which so far as material to this review, they asserted that James C. Brooks, deceased, had, during his lifetime given to Hazel B. Ward any indebtedness remaining due on the note, and had expressly forgiven Loyd and Hazel Ward all of the remaining debt due on the note.

After hearing, the Chancellor adjudged and decreed that Loyd Ward and Hazel Ward were not indebted to Vernease Brooks on the note as alleged in the complaint filed on the law side of the court. This appeal is from that decree.

The evidence shows that Hazel B. Ward is the daughter of James C. Brooks by his first marriage which was terminated by a divorce. After his divorce he married the appellant-respondent in the present proceedings.

In 1960 Hazel and Loyd Ward requested Mr. Brooks' aid in raising $10,000.00, so that Loyd Ward could purchase a business enterprise. The money was obtained by Mr. and Mrs. Brooks by executing a mortgage on their property and turning the proceeds over to the Wards. The note here sued on was executed as evidence of this debt. The additional $500.00 over the $10,000.00 loaned the Wards represented fees paid by the Brooks in obtaining their loan.

Payments on the note were made by the Wards through 1 September 1962, the total payments having reduced the indebtedness represented by the note to $10,000.00.

According to the testimony of Hazel B. Ward, Mr. Brooks was at the Ward home on a day in the fall of 1962. Her husband Loyd, Cecil Pulliam, and Elwood Rutledge were also present on this occasion. As to what was said on this occasion Mrs. Ward testified as follows:

"A. He just told me he didn't want me to pay any more on that note. He said he gave my mother $10,000.00 when they were divorced, and that my brother was dead and he couldn't do anything for him, and he wanted me to have that.

"Q. Did Loyd say anything to him about stock in the store?

"A. Loyd told him that he had borrowed it from him and he would give him the stock in the store, and Daddy said he didn't want it; he wanted him to give it to me. That he didn't want the money paid back, he wanted it to be mine.

"Q. What else do you remember he said?

"A. He told Elwood that he wanted to make a Will. That he had never made one, and that he was going to make one and since Elwood and his partner handled our papers on the store that he would come over there and let Elwood make a Will for him."

As to this conversation Mr. Ward testified:

"A. He told my wife he was giving her the note; that we didn't have to pay any more on the note. That he couldn't give her the note but she didn't have to pay any more on it because it had been taken and hid by his wife.

"Q. To refresh your recollection, did he say anything to your wife about having given your wife's mother $10,000 when they were divorced?

"A. Yes, sir, he did, and * * *

"Q. And did he say anything about your wife's brother?

"A. He said, her brother, that he couldn't give him anything because he was dead, but he could do that for her; that he had already given the same amount to her mother. At that time I told him that I planned to buy out the rest of the business and that I would give him the stock for the note if he wanted it that way, and he said, no, that he was giving Hazel the note, and to put the store in her name because it was hers, and that is what I did."

Relative to this conversation, Cecil Palliam testified:

"Q. Do you remember what was said?

"A. About a Will. He told Elwood he wanted him to fix out a Will, and something was brought up about $10,000.00, and he told Loyd just to make the stock to Hazel.

"Q. He was talking about $10,000 that they owed him?

"A. Right.

"Q. Do you remember, before that was something said by Mr. Ward to the effect, I will give you the stock in the store?

"A. That's right. Then Mr. Brooks said, 'Just make it to Hazel.'

"Q. Was anything else said about the $10,000?

"A. Off-hand, that is about all. That is all I remember."

The testimony of Mr. Elwood Rutledge, an attorney at law, bearing on this conversation was as follows:

"A. Mr. Brooks was talking to me part of the time with all of us present there, and he was talking about making a Will. He wanted to see me about making his Will, and I told him to come to my office when he could and I would get the information from him and make his Will. At that time he told me some of the things that he might want in it, but we didn't go into the full aspects of it, of course.

"Q. Was anything said there about $10,000 that Loyd and Hazel owed him?

"A. Yes, he did mention the fact that there was a note from Loyd and Hazel to him and he stated that he wanted to make that or give it to them. I forget exactly how he stated it.

"Q. Did Loyd say anything about giving him stock in the store for it?

"A. Yes, Loyd was talking about he was going to reorganize or buy out the other fellow, or something, and said he would give him stock in the store for the note, and Mr. Brooks told him to give it to Hazel * * * To issue the stock to Hazel.

"Q. Do you have any recollection as to what time of the year this took place?

"A. To the best of my recollection it was sometimes in the Fall * * * October or November."

On her own behalf, and as administratrix of the estate of James C. Brooks, Vernease Brooks testified that she and Mr. Brooks gave a note and mortgage to obtain the money loaned to the Wards. When the Wards mailed their note which is the basis of this suit, Mr. Brooks laid it on the breakfast room table and she later placed it in a drawer where she and Mr. Brooks kept their papers. Mr. Brooks saw her place the note in the drawer where it remained until Mr. Brooks' death. She at no time secreted the note, and Mr. Brooks never asked for it.

Appellant's assignment of error No. 1 is to the effect that the court erred in rendering the decree in favor of Loyd Ward and Hazel B. Ward and against Vernease Brooks individually, and as administratrix of the estate of James C. Brooks, deceased.

The question presented under assignment No. 1 by argument in briefs is whether under the evidence the Wards acquired any interest in the indebtedness remaining due on the note either by gift, or by release through forgiveness.

█ Clearly the Wards acquired no interest in the remaining indebtedness due on the note by way of a gift. This indebtedness was evidenced by a note which was capable of manual delivery. If Mr. Brooks was not in position to deliver the note itself, a constructive delivery of the same could have been accomplished by a written receipt for the balance due, or a written assignment of the note, or by a written release.

█ A delivery of personal property where the intent is to make a gift is essential, and it should be as complete as the circumstances will permit. A parol gift of personal property is inoperative until the custody, control, and management of property passes from the donor to the donee and is possessed by the donee. Walker v. Crews, 73 Ala. 412; Hudgens v. Tillman, 227 Ala. 672, 151 So. 863; Garrison v. Grayson, 284 Ala. 247, 224 So. 2d 606; Stephenson v. Westbrook, 286 Ala. 620, 244 So.2d 569; Sec. 129, Title 47, Code of Alabama 1940.

Counsel for the respective parties argue pro and con as to whether the debt evidenced by the note was released by Mr. Brooks.

Section 4, Title 9, Code of Alabama 1940 provides:

"An obligation is extinguished by a release therefrom given to the debtor by the

creditor, upon a new consideration, or in writing with or without new consideration."

In our consideration of this appeal we have not overlooked the possible effect of Section 433, Title 7, Code of Alabama 1940, (Dead Man's Statute), in rendering incompetent the testimony of Loyd and Hazel Ward pertaining to the statement of Mr. Brooks concerning the gift or the release of the note.

The fact that the Wards had a pecuniary interest in the outcome of the suit, and the further fact that Mr. Brooks' estate would be affected by the suit, would seem to place the competency of the Wards as witnesses squarely within the terms of Section 433.

In the hearing below no objections were interposed to the testimony by the Wards relative to their conversation with Mr. Brooks. However, this being an equity case no objection was necessary, and neither the Chancellor nor this court can consider that part of the testimony of Mr. and Mrs. Ward which is within the exclusionary rule of Section 433. Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115; Act 101, Acts of Alabama, 1943, p. 105, which appears in the pocket part of our 1940 Code as Section 372(1), Title 7.

With this incompetent testimony eliminated there remains only the testimony of Mr. Pulliam and Mr. Rutledge on this issue. Their testimony would seem to indicate that at the time of the conversation Mr. Brooks was concerned mainly with the preparation of his will, and the testimony of Mr. Pulliam and Mr. Rutledge tending to establish a gift or a release of the Ward indebtedness is quite unsatisfactory probatively because of its fragmentary character. However, we refrain from a consideration of whether Mr. Pulliam's and Mr. Rutledge's testimony was sufficient to sustain this decree in the aspect of a release in that we think that another principle necessitates the conclusion that no effective release binding on Mrs. Brooks was effectuated under the facts presented.

Under the doctrine of our cases Mr. and Mrs. Brooks, as payees of the note were joint holders of the note in due course, (Ex parte Goldberg & Lewis, 191 Ala. 356, 67 So. 839; Section 2, Title 39, Code of Alabama 1940) though subject to such defenses by the makers as were known to the payees at the time the note was executed.

As a general rule a debtor may effectively pay and discharge, in whole or in part, his debt to join creditors by payment to one of the creditors. Ayers v. Ayers, 261 Ala. 421, 74 So.2d 250; Peck v. Lampkin, 200 Ala. 132, 75 So. 580.

However in Peck v. Lampkin, supra, after stating the above rule, the court added:

"* * * But we apprehend that, if one of the joint obligees would accept property, other than money, in satisfaction, in whole or in part, of the jointly held demand, he, and the debtor as well, must be able to refer their act to some express previous authorization to that end by the co-obligee, or else present a ratification of the act by the co-obligee."

To this same effect it is stated in 142 A.L.R., at page 380, (Sec. V.a):

"The view has been taken in a number of cases that an obligee is not bound by a release or discharge effected by his co-obligee with the obligor, where the settlement culminating in such release or discharge gives such co-obligee making the settlement an individual benefit not common to all the obligees. Mosby v. United States, (1912), CCA 6th, 194 F. 346; Rooks v. Stanaland, (1924), 33 Ga.App. 8, 124 S.E. 904, supra III; Lemiette v. Starr, (1887), 66 Mich. 539, 33 N.W. 832; Weir Plow Co. v. Evans, (1893, Tex.Civ.App.), 24 S.W. 38, supra IV; Remington v. Eastern R. Co., (1901), 109 Wis. 154, 84 N.W. 898, 85 N.W. 321."

In the present case Mr. and Mrs. Ward knew that Mr. and Mrs. Brooks had bor-

rowed $10,500.00 in order to obtain $10,-000.00 to loan to the Wards. The Wards knew that Vernease Brooks was a joint payee of the note. The Wards knew that Vernease Brooks was not present at the time of the conversation purportedly establishing either a gift of the indebtedness or release thereof by Mr. Brooks. The fact that Mr. Ward offered to place stock in his contemplated business enterprise in Hazel B. Ward's name resulted in no benefit to Mrs. Brooks, the co-owner and co-payee of the debt and note. There is not a scintilla of evidence from which it can be inferred that Mrs. Brooks authorized or ratified the purported release.

Under these circumstances no court of law or equity should permit a co-payee of a note to be deprived of the debt represented by the note.

It appears from the evidence that the Wards made payments on the note, the last being a payment of $150.50 on 1 September 1962. Mrs. Brooks' suit was filed within six years from that date, that is, within the six year limitations period.

▮ While no payments were made on the note following the 1 September 1962 payment, such fact cannot serve to sustain the Chancellor's decree on the theory of laches.

The note created a purely legal demand as distinguished from an equitable one.

Where the issue involved is a legal one of which courts of law have exclusive jurisdiction, or jurisdiction concurrent with courts of equity, and the action at law "gets into equity" under the removal statute, laches of a party can constitute no defense, and a defense in respect to lapse of time is controlled exclusively by the appropriate statute of limitations. Ballenger v. Liberty National Life Ins. Co., 266 Ala. 407, 96 So.2d 728.

Therefore the fact that no payments had been made on the note for almost six years could not be deemed to have created any rights in the Wards by laches, the statute of limitations of six years being determinative of this question.

For the reasons stated above this decree is due to be reversed. It is so ordered.

Reversed and remanded.

LAWSON, MERRILL, MADDOX and McCALL, JJ., concur.

## On Rehearing

HARWOOD, Justice.

Upon original deliverance we reversed the decree of the lower court and remanded the cause to such court.

▮ Appellant has filed an application for rehearing requesting that we modify our original order as to remandment only, and remand the cause to the lower court with directions to enter an appropriate order re-transferring this case to the law docket for further proceedings.

We think the application of the appellant well taken.

In the hearing in the equity court after transfer, the complainants (appellees) failed to establish the equitable defenses set forth in their bill of complaint, as amended. On this basis we reversed the decree entered in favor of the complainants.

Section 155, Title 13, Code of Alabama 1940, provides that when any cause is transferred from law to equity (or from equity to law) and the party moving for such transfer fails to establish or maintain the question, right, or defense asserted by him, and the cause cannot be finally disposed of on the side of the court to which it was transferred, the judge so hearing the cause shall so state in his judgment or decree, but shall not dismiss the cause and shall direct that the cause be re-transferred to the side of the court in which it was originally filed and shall tax all costs then accrued against the party who applied for the transfer.

**616**

The complaint of the appellants as filed on the law side sought recovery on a promissory note. This raised purely a legal question, and not an equitable one where the decree would be a personal decree against the makers of the note.

While our order of reversal was appropriate, that part of our order remanding the cause is modified and one is now entered remanding the cause to the lower court with instructions to enter an appropriate decree re-transferring the cause to the law docket for further proceedings.

Application of appellant for modification of our original judgment granted to the extent of remanding this cause with instructions.

LAWSON, MERRILL, MADDOX and McCALL, JJ., concur.