Robert G. **KIRCHEIS**

v.

**William H. LONG, Warden of Kilby Corrections Facility.**

Robert G. **KIRCHEIS**

v.

**Kater WILLIAMS et al.**

**Nos. 76–295–P, 75–272–P.**

United States District Court, S. D. Alabama, S. D.

Dec. 6, 1976.

Vincent F. Kilborn, III, Mobile, Ala., for plaintiff.

Jack Curtis, Asst. Atty. Gen., Montgomery, Ala., Roderick P. Stout, Mobile, Ala., for defendants.

## ORDER AND DECREE

PITTMAN, Chief Judge.

Plaintiff, convicted of murdering his wife, is incarcerated in Kilby Correctional Center, Montgomery, Alabama. His original complaint, explicitly seeking injunctive and monetary relief under 42 U.S.C. § 1983, named seventeen defendants. Plaintiff later filed a separate writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both actions were heard and are considered together. This order and decree is to be considered as an order and decree in each case.

Plaintiff's writ of habeas corpus attacks the legality of his state-imposed incarceration. Kircheis (petitioner) claims the prosecution withheld evidence that if produced would tend to exonerate him. It is further claimed that the prosecution made a "deal" with a key prosecution witness that special favors would be given him if he testified against Kircheis and that the defense was

not informed of this "deal". His 1983 action seeks relief against Mobile City and County law enforcement officials who are claimed to have been responsible for wrongfully releasing plaintiff's personal property that was confiscated upon arrest. The City defendants and plaintiff have entered into a settlement agreement and the case against them has been dismissed. The complaint alleges that the disbursement of his personal property removed from his reach these aforementioned documents that tended to support plaintiff's claim of innocence. As a result of the distribution, plaintiff seeks both compensatory and punitive damages as well as a return of the property.

Kircheis was convicted by a jury in Mobile County Circuit Court in February 1975 of murdering his wife with malice aforethought. His conviction and life sentence was upheld by the Alabama Court of Criminal Appeals, *Kircheis v. State,* 323 So.2d 412 (1975), and certiorari denied by the Alabama Supreme Court.

A review of the facts is necessary to understand the basis for the writ of habeas corpus and the 1983 action.

Plaintiff and his wife lived in an apartment in Mobile, Alabama. Both were college educated. Plaintiff had worked as an accountant at a local country club but prior to his wife's death he lost his job. Mrs. Kircheis was murdered on Saturday, April 13, 1974. She was bludgeoned to death by a claw hammer in her own bed at an undetermined time on Saturday. Her body was found that evening by friends.[1]

According to evidence for plaintiff, he and his wife had encountered marital problems as a result of his excessive drinking. On Thursday, April 11, they decided to make a new start in their marriage. It was agreed that plaintiff would leave town, look for a new job, and upon securing a position, his wife would join him. According to his testimony of his trial defense counsel, petitioner during his trial claimed that on Thursday, April 11, rather than looking for a job, he started drinking and deciding it

unwise to leave town in his condition, spent the night in his car in front of his apartment. He intended to leave on Friday, but again started drinking and rather than drive while intoxicated, spent the night in the Eight Days Inn in Mobile on Friday evening. Upon checking out on Saturday morning, Kircheis obtained a receipt for the payment of the motel bill, placing it in a brown briefcase in which he carried many of his personal papers. He claims to have left Mobile early Saturday morning, arriving in Memphis, Tennessee between two and four P.M. that afternoon. He again started drinking and spent most of the evening at the Golden Nugget Topless bar in Memphis. Plaintiff did not remember, because of his intoxication, the motel in Memphis. He states that he later recollected the Golden Nugget only upon finding in his wallet a bar membership card. He believes that upon paying for the room in Memphis, he placed his motel receipt in the brown briefcase. From Memphis, petitioner journeyed to Sedalia, Missouri, where he spent Sunday night at the local Holiday Inn. The next day he left without paying for the room. He claims he retained his room key which he placed in his briefcase. Des Moines, Iowa and Reno, Nevada were his next stops. After several days in Reno, petitioner was arrested and incarcerated by the local authorities.

While locked-up in Reno, the FBI questioned the petitioner as to his wife's murder. Arrangements were made to extradite petitioner to Mobile to face murder charges. While in Reno, FBI Special Agent Ricks of the Reno office interviewed petitioner. Special Agent Ricks was given written permission by the petitioner and shipped all of plaintiff's belongings via registered mail to FBI Special Agent Farley in Mobile. Special Agent Farley, after inventorying the property, forwarded it to Lt. Sam McLarty of the Mobile City Police. During the same general time, FBI Special Agent Root of the Des Moines office was notified that plaintiff had, prior to enplaning in Des Moines for Reno, left his car in the Des

---

1. See *Kircheis v. State,* 323 So.2d 412 (Ala.Cr. App.1975).

Moines airport parking lot. After securing a search warrant, Agent Root removed all personal items from plaintiff's car, inventoried the contents and forwarded evidentiary items to the FBI laboratory in Washington, D.C. and what remained to the Mobile FBI office. The FBI laboratory examined the property and sent it to Agent Farley in Mobile, who made an inventory, and signed the items over to Lt. McLarty. The items sent from Des Moines directly to the Mobile FBI office were also signed over to Lt. McLarty.

Upon plaintiff's return to Mobile, he was placed in the Mobile City Jail. Documents were inventoried, xeroxed, and divided into evidentiary and non-evidentiary matters by the City Police. The petitioner was indicted for his wife's murder and was transferred to the county jail. Part of his property was transferred to the county jail to the custody of Deputy Robert L. Appling of the Mobile County Sheriff's Department.

The evidence is uncontradicted that Deputy Appling produced all the personal property of the petitioner's in his possession. It was searched and examined by the petitioner and his attorney.

The sought-after motel receipts and key were not in petitioner's possession or Deputy Appling's custody. Any materials in Deputy Appling's custody sought by the petitioner or his attorney of record was available to them at the time of trial but they did not choose to use any of these items.

Plaintiff's defense to the murder charge was that he was out of town at the time his wife met her death. This claim, according to plaintiff, would have been corroborated by motel receipts and motel key alleged to be in his brown suitcase or in his personal belongings. The initial pre-trial discovery exchanged between the defense and the prosecution failed to produce any motel receipts or keys. Petitioner then sought a motion to produce all documents and other objects. This was granted by the state court in December, 1974, more than two months prior to the trial. The City police then in possession of the property, in partial compliance with the order, allowed petitioner and his attorney to go through many of plaintiff's articles. The police did not, however, turn over the brown briefcase or any motel receipts. Trial began on February 26, 1975. It was not until one day prior to the trial that Mr. Childress, plaintiff's defense attorney, was able to go through the brown briefcase. Other luggage and personal belongings were not made available for this inspection. No motel receipts or keys were found. The jury did not believe plaintiff was out-of-town at the time of the murder and returned a guilty verdict. Introduction of the motel receipts may have raised a question in the jurors' minds as to whether he actually was in town during the murder.

The court does not know if the Memphis receipt existed. Following the trial, plaintiff, because he was facing life imprisonment, told fellow inmate W. C. Wilkens, he could have petitioner's personal property. It was agreed that Wilken's girlfriend, Patricia Bonner, would pick up the property. A relative of his girlfriend actually retrieved the property. Wilkens and his girlfriend ceased their relationship before Wilkens was released from prison. The girlfriend and her relative are thought to be in New Orleans, Louisiana. The whereabouts of this property is unknown.

At the hearing, the City police admitted that at the time of the murder trial, they were in possession of the Mobile motel receipt, the Missouri receipt, and the Missouri motel key. Admitted in evidence in the hearing and produced from the City's custody is an original Mobile motel receipt and a xeroxed Missouri motel registration. The original and key are missing. It is not clear why these items were not produced. The court has no way of knowing if it was negligence or deliberate suppression. It appears to have been gross negligence.

A second disturbing point was developed. When plaintiff was first returned to Mobile, he was placed in the city jail. An inmate, Melvin Summerlin, was placed in the cell with the petitioner to see what he could find out. Mobile authorities asked Sum-

merlin to convey to them any information petitioner may relate regarding the circumstances surrounding plaintiff's wife's murder. At that time, the summer of 1974, Summerlin was co-defendant in a murder case. Summerlin gave a statement to police on July 30, 1974, concerning incriminating statements by petitioner, the petitioner, in the murder of his wife. Three and one-half months later, Summerlin pleaded guilty to a reduced charge of voluntary manslaughter, and was shortly thereafter released from custody. Summerlin also testified against Kircheis at his murder trial. The Mobile District Attorney, who was familiar with both the Summerlin plea and Kircheis murder trial, testified at the habeas corpus hearing that "no deals" were made with Summerlin and concluded he voluntarily agreed to testify against Kircheis. The District Attorney admitted that there was an understanding that the District Attorney would consider Summerlin's cooperation when making his sentence recommendation. This "understanding" between the prosecution and Summerlin was not brought to the petitioner's nor the jury's attention. The petitioner claims he had a right to know this in order to provide a basis for attacking Summerlin's creditability.

Petitioner further seeks $200,000 in compensatory damages for the wrongful disposition of his personal property. He claims the County Sheriff's Office acted illegally when they distributed his property to a person who did not have authority to receive the property. Petitioner states that W. C. Wilkens' girlfriend, Ms. Patricia Bonner, was the only person authorized to pick up the property and its disposition to a third party entitles petitioner to damages.

This court has to deal with three aspects of this action. First, the prosecution's failure to produce possibly exculpatory evidence when so required by a court order; second, the failure of the prosecution to inform the plaintiff at his murder trial of its "understanding" with one of the prosecution's chief witnesses; and third, the va-lidity of plaintiff's 1983 action against the County Sheriff's Office.

I. Failure to Release Physical Evidence.

The purpose of a writ of habeas corpus under 28 U.S.C. § 2254 is to afford a trial-type proceeding in federal court for state prisoners aggrieved by unconstitutional detention. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The writ has been used by federal courts to remedy various prosecutional indiscretions that work to the disadvantage of a defendant. *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1934) was one of the first "modern" cases that found when a conviction is based upon perjured testimony, and the prosecution knew it was perjured, then the defendant's constitutional due process rights have been violated. In such an instance, the judicial proceeding is used merely as a legal subterfuge for wrongfully depriving a defendant of his liberty. *Holohan* at 112, 55 S.Ct. 340.

*Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), a logical extension of *Holohan,* holds that the prosecutor, though not necessarily soliciting false testimony, is under an obligation to correct the testimony when it appears that the failure to remedy the untruth would prejudice the defendant. As such, this too would be a constitutional due process violation. The rule upon which petitioner relies, which goes one step further than *Napue,* is *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* spells out the present constitutional rule requiring the prosecutional disclosure of material evidence pertinent to the defendants' guilt or innocence. Justice Douglas, in his majority opinion in *Brady* stated:

"...  the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196.

In *Brady,* two defendants were found guilty of first degree murder and sentenced to

death. It was only after the trial that defendant Brady found that the other codefendant had prior to trial admitted in an extra judicial statement the actual commission of the murder. Seeking a review of his sentence, defendant Brady claimed that suppression of the evidence violated his due process rights. The Supreme Court agreed, holding that the suppression of the confession was material as to the punishment received and consequently the state violated his due process privileges. Defendant Brady was charged under the murder felony rule, so whether he actually committed the murder was of little consequence in determining guilt but the jury, which under Maryland law imposes sentence, may have imposed a sentence less onerous than death if the codefendant's confession had been submitted to the jury for consideration. The court in *Brady* granted a new trial only as to the imposition of punishment.

The Fifth Circuit, of course, follows the *Brady* rule, requiring the suppressed evidence to be ". . . material to exculpation or impeachment." *United States v. Hildebrand*, 506 F.2d 406, 409 (5th Cir. 1975). The courts are not placed in a position passing judgment on the credibility of the defendant's claimed sequence of events but only upon applying the constitutional rule that places

". . . an affirmative duty on the prosecution to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct or impeaching evidence". *Williams v. Dutton*, 400 F.2d 797, 800 (5th Cir. 1968).

■ The court must make a determination as to whether the failure by state authorities to turn over the motel receipts to Kircheis, when required to do so by court order, was material to either the question of guilt or the imposition of punishment. The Fifth Circuit applies a strict standard when evaluating the materiality of asserted *Brady* information. *United States v. Crockett*, 534 F.2d 589, 601 (5th Cir. 1976).

" 'Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.' " *Calley v. Callaway*, 519 F.2d 184, 222 (5th Cir. 1975).

Accordingly, the non-disclosed evidence must be "crucial, critical, and highly significant." *Crockett* at 601. Under these standards the court feels that the excluded evidence should have been produced.

■ Kircheis claims to have either been in Memphis or on his way there when his wife encountered her murderer. He has no witnesses to substantiate this claim. He relies upon motel receipts as evidence of his claim. Memphis is over four hundred miles northwest of Mobile. Obviously, the time of plaintiff's arrival in Memphis on Saturday if he was there, and the time of his wife's murder on Saturday are critical. Acceptance by the jury of Kircheis' claimed time sequence could be bolstered by a showing of the withheld evidence. This evidence, going to an issue as basic as guilt or innocence is critically material and falls within the *Brady* rule. The admitted failure by police to produce other critical evidence raises questions a jury is entitled to know to help them determine if the petitioner's claim that a Memphis receipt existed. Petitioner's due process rights were violated.

## II. Failure to Release Impeaching Evidence.

The second issue faced by this court is whether the prosecution was under an obligation to inform defendant of their oral "understanding" with Summerlin, one of the key prosecution witnesses. It was admitted that if Summerlin signed a statement and testified as to any incriminating statements made by Kircheis while in jail, this assistance would be considered in the pending prosecution against Summerlin. A 1st Degree Murder charge was reduced to Voluntary Manslaughter. All of the state's

other evidence against the petitioner was circumstantial.

■■ Petitioner relies upon *Brady, supra,* and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In *Giglio,* after the trial which resulted in defendant's conviction, it was disclosed that a key prosecution witness was promised immunity from prosecution if he agreed to testify in the state's favor. This promise of immunity was not related to the defense until after trial. In the case *sub judice,* there was similarly an "understanding" between Summerlin and the prosecution. *Giglio* held that

"[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule [requiring disclosure]." 405 U.S. at 154, 92 S.Ct. at 766.

The question is not whether the disclosure of an agreement affects only the credibility of the witness, but rather, this undisclosed evidence

". . . may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue, supra,* 360 U.S. at 269, 79 S.Ct. at 1177.

When the *Brady* and *Giglio* rules are invoked, the failure to disclose impeaching evidence

". . . must have a definite impact on the credibility of an important prosecution witness in order for the nondisclosure to require reversal." *Calley v. Callaway,* 519 F.2d 184, 222 (5th Cir. 1975).

See also *United States v. Crockett,* 534 F.2d 589, 601 (5th Cir. 1976). Applying a strict standard, *Crockett* at 601, the circumstances underlying Summerlin's testimony would clearly reflect upon his credibility. Consequently, the plaintiff's due process rights have been violated. *United States v. Tashman,* 478 F.2d 129 (5th Cir. 1973); *United States v. Smith,* 480 F.2d 664 (5th Cir. 1973). The rule requiring disclosure does not make a distinction between oral and written understandings. *United States v. Joseph,* 533 F.2d 282, 286 (5th Cir. 1976).

It is clear to this court that the failure of the prosecution to inform the defendant of discussions with Summerlin violated the defendant's due process rights.

In the petitioner's Civil Action No. 76–295–P, his habeas corpus petition, it is hereby ORDERED, ADJUDGED and DECREED, that the 1st Degree Murder conviction for which he was convicted in the Circuit Court, Mobile County, Alabama, in February 1975, and the subject of his appeal to the Criminal Court of Appeals of Alabama, styled *Robert G. Kircheis v. State,* 323 So.2d 412 (1975) is hereby VACATED. The State of Alabama is granted ninety (90) days from this date to re-try the defendant or discharge him from further service on the sentence.

### III. 1983 Action.

The third and final point to be considered by this court is plaintiff's 42 U.S.C. § 1983 claim against defendant Deputy Sheriff Robert L. Appling of the Mobile County Sheriff's Department for wrongfully disbursing plaintiff's personal property.

■ Initially, the claim of a wrongful disposition of personal property can be heard under § 1983. *Lynch v. Household Finance,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Diamond v. Thompson,* 523 F.2d 1201 (5th Cir. 1975). The imposition of a life sentence at the time of petitioner's conviction prompted him to offer his property to his cellmate, W. C. Wilkens. The agreement between the two men was oral, and since personal property was involved, the actual receipt of the property by the donee is necessary to complete the transaction. *Brooks v. Wards,* 287 Ala. 609, 254 So.2d 175 (1971); *Stephenson v. Westbrook,* 286 Ala. 620, 244 So.2d 569 (1970). Ms. Patricia Bonner, Wilkens' girlfriend, was to act as Kircheis agent, storing the property until Wilkens was released from prison. Since Wilkens never received possession of the property, it was technically still owned by Kircheis, and the court is

faced with the question of whether Lt. Appling acted reasonably in giving the property to Leonard Parker.

 Federal courts are not disposed to interfere with the internal operation of prisons and will review prison operations only upon a showing of abused discretion. *Conklin v. Wainwright,* 424 F.2d 516 (5th Cir. 1970) *cert. den.* 400 U.S. 965, 91 S.Ct. 376, 27 L.Ed.2d 385 (1970). Jail rules require written permission from the prisoner in order to allow distribution of his property. In the case *sub judice,* petitioner had forwarded a letter to Lt. Appling stating he had given permission to Ms. Bonner to pick up the property. The confiscated property included golf clubs, bowling balls, suitcases, etc., and it was suggested that Ms. Bonner have a male assist her in the pick up. When Leonard Parker, in Ms. Bonner's stead, came by the county jail to retrieve the property, he had the letter Kircheis sent to Ms. Bonner. It would be reasonable to suppose that Parker was acting as Ms. Bonner's agent. Lt. Appling required that Parker sign a receipt for the property. It seems to this court that the failure of Wilkens to obtain possession was the result more of a faultered relationship between Wilkens and Ms. Bonner than any negligence on Lt. Appling's part. This court concludes that Lt. Appling acted within reasonable bounds of discretion in allowing Parker to have the property.

In the plaintiff's 1983 case, Civil Action No. 75–272–P, it is ORDERED, ADJUDGED and DECREED that the court finds for the defendant, Deputy Sheriff Robert L. Appling, and against the plaintiff.

No costs are taxed.