# Thomas *v.* Tilley, *et al.*

*Bill to Establish Transfer and Foreclose Mortgage.*

(Decided May 9th, 1906.   41 So. Rep. 854.)

1. *Witnesses; Transactions with Deceased Person.*—Under Section 1794, Code 1896, the donee is incompetent to testify as to what occurred between himself and the donor, who had died, concerning the making of the gift.

2. *Gifts; Burden of Proof.*—To establish a gift alleged to have been made by a deceased person, the burden is on the person claiming the gift to show by proof, clear and convincing, that the subject matter had passed to him by valid and effective gift.

3. *Same; Gift Inter Vivos; Quantum of Proof.*—The same quantum of proof is required to support a gift inter vivos, when not asserted until after the death of the donor, as is required in gift causa mortis.

4. *Same; Delivery.*—To constitute a completed gift of personal property, the article must have been delivered to the donee.

[Thomas v. Tilley, *et al.*]

5. *Same; Evidence; Sufficiency.*—While the declarations of the deceased donor are admissible as evidence, they are not sufficient, of themselves, to establish a completed gift.

6. *Same*—The evidence in this case examined and held insufficient to establish a gift.

APPEAL from Tuscaloosa Chancery Court.

Heard before Hon. A. H. Benners.

Bill by J. M. Thomas v. C. A. Tilly,, et al., to establish the transfer of a mortgage and to foreclose the same. The facts are sufficiently stated in the opinion of the court.

HENRY FITTS, for appellant. Declarations of an alleged donor of an intention to give are admissible as tending to establish the gift. And when proof of these declarations is accompanied by proof of the subsequent possession of the thing given, the evidence is sufficient to authorize the presumption that the gift has been made.—*Olds v. Powell,* 7 Ala. 652; s. c.; 9 Ala. 861; *Nelson v. Iverson,* 19 Ala. s. c.; 17 Ala. 222; *Gillespics' Case,* 28 Ala. 561; *Wheeler v. Glasgow,* 97 Ala. 700; *Reid v. Colcock,* 9 Am. Dec. 729; 14 A. & E. Ency. of Law, 1050 and cases cited.

From the declarations of the donor the court and jury are authorized to infer everything that is necessary to the confirmation of a legal gift, including the intention to give, the act of giving, the delivery and the consent to accept.—*Sims v. Sims,* 2 Ala. 117; *Grangil v. Arden,* 10 Johnson, 303; *Reid v. Colcock, supra; Lord v. Life Insurance Co.,* 56 L. R. A. 597, and authorities cited; Greenleaf Ev. Sec. 147; 16 Cyc. p. 120 and note 29; 14 A. & E. Ency. of Law, 1051.

DANIEL COLLIER, M. .T ORMOND and HENRY A. JONES, for appellees.—The donee was not competent to testify to the declaration of the deceaesd alleged donor.—Sec. 1794, Code 1896. The delivery of a mortgage only will not carry with it, a note secured thereby so as to perfect the gift; but if both are delivered it will.—*McHugh v. O'Connor,* 91 Ala. 243; 89 Ala. 43. In the absence of the

proof of an actual delivery the evidence in this case was not sufficient to constitute a valid gift. Authorities supra; *Hundley v. Hundley,* 15 Ala. 104; *Sewell v. Glidden,* 1 Ala. 53; *Sims v. Sims,* 2 Ala. 117; *Blakey v. Blakey,* 9 Ala. 391; *Phillips v. McGrew,* 13 Ala. 255; *Walker v. Crews,* 73 Ala. 412; *Brayant v. Ingraham,* 16 Ala. 121. Declarations after the consumation of the gift are inadmissible for the purpose of effecting the gift.—*Gillespie's Case,* 28 Ala. 551. The pretended gift in this case is rendered void by Sec. 1015, Code 1896.

SIMPSON, J.—The original and amended bills in the case, filed by appellant, set up the claim that J. W. Thomas, the father of the complainant, J. M. Thomas, in his lifetime gave to complainant a certain note and mortgage, which is admitted to be due, by J. L. Tilley and C. A. Tilley, defendants; and the prayer is that the court establish the transfer as valid and foreclose the mortgage. The widow and heirs of said J. W. Thomas controvert the fact of the assignment and transfer of said note and mortgage.

The testimony for the complainant, beyond his own, which was properly objected to as violative of section 1794 of the code of 1896, was, first, by the wife of the complainant, who testified that, shortly after the execution of the Tilley mortgage, John W. Thomas told her that he had sold the land to Tilley and taken the mortgage, in order that he might give it to complainant; also that on one occasion her said husband and his father came to her home together; that her husband had the mortgage and note, and handed it to her, telling her to put it away; that she placed it in a trunk, where it remained until after the death of J. W. Thomas; that other papers of J. W. Thomas were subsequently brought by her husband and placed in the same trunk, which are not claimed by said J. M. Thomas; that on the occasion in question said J. W. Thomas remained at his said son's house from Friday evening until Monday morning, and told her several times "that he had given the paper to Johnny," and as he was leaving told her not to let John (her husband) forget to get other papers which he had left at the courthouse, and he told her again as

he was leaving that he had given the mortgage to John. The note and mortgage were on one paper, and were not indorsed by said J. W. Thomas. A son of the complainant, 20 years of age, testified that he remembered when his grandfather came to the house with his father, and heard him tell his mother "that he had given the Tilley mortgage to my father, in the courthouse." The witness Richard Malone testified that John W. Thomas told him on one occasion that he was going to give some notes, which J. L. Tilley and another had made to him, to his son John M. Thomas, because he had never given him anything, and that he believed he (J. W.) would not live long. He never heard him say that he had given them. He states that said J. W. Thomas made this statement to him once when he was going to market at Tuscaloosa, and another time at said J. W. Thomas' home, and that witness' wife, Roxie Malone, was present on the latter occasion.

Gilbert Meadows, a witness for the defendants, a son-in-law of J. W. Thomas, testified to a conversation with said decedent in January or February, 1901, not long before his death, in which said Thomas wished him to take care of the Tilley mortgage and other papers for him. W. K. White, a witness for the defendants, testified to a conversation in the presence of himself and Capt. James White, between J. W. Thomas and his son, J. M. Thomas, shortly after the Tilley mortgage was made, in which said son was trying to persuade his father to let him have the Tilley land, or land notes, and the father replied that he could not let him have the property, because it would be doing too much for one child and none for the rest. He testified, further, that said J. W. Thomas came to the camp where witness and said Capt. White were on that night, and had a conversation with said Capt. White, in which Thomas said that he did not let his son have the Tilley notes or land, and that he was going to treat all his children alike. Francis Cooper, witness for defendants, testified to a conversation with J. W. Thomas, shortly before he died, in which said Thomas said that he had not given the Tilley mortgage and other papers to his son, but had merely placed them in his hands to take care of them for him,

[Thomas v. Tilley, *et al.*]

and he was afraid his wife would destroy them. Alabama Sullivant, formerly the widow of J. W. Thomas, testified to a conversation between the father and son, just before the former died, in which the father told his son that he wished this Tilley mortgage to be divided between said witness and said J. M. Thomas and his two girl children. Three witnesses testified that. Capt. James White died before the time fixed by W. R. White for the conversation between said J. W. Thomas and said Capt. James White. Willey Sullivant testified in a general way to hearing John W. Thomas say he was going to do something for his son J. M., and giving reasons therefor.

The testimony as to the mental condition of J. W. Thomas was conflicting, and probably not sufficient to show that he was incapable of sensibly disposing of his property. The burden of proof was upon J. M. Thomas to show by clear and convincing proof that the note and mortgage which John W. Thomas held against Tilley had passed from said J. W. to him by a valid and effective gift. "The quantum of proof requisite to support a gift in any case is that which, taking into consideration the situation and relation of the parties and the nature of the subject-matter of the gift, clearly and fully estabishes every fact necessary to constitute a valid and complete gift."—14 Am. & Eng. Ency. Law (2d Ed.) p. 1049. It is stated, also, that where the claim is not asserted until after the death of the donor the evidence must be as clear, strong, and convincing as in a gift causa mortis. —Id., and note 4.

It is undoubtedly the law that, in order to constitute a complete gift of personal property, it is necessary that the article be delivered to the donee. In an early case in this court, where a special verdict was found that O. had executed a deed conveying slaves to his son, and the jury further found that "a formal delivery of the slaves was subsequently made," the court held that not enough to justify a judgment in favor of said donee, but reversed the case, in order that a venire facias de novo could be issued.—*Sewall v. Glidden*, 1 Ala. 52.

Again, where a father called a negro woman into the yard where his daughter was, called witnessses, and said, "In the presence of you all, I give this negro to my daughter Mary," and although he had previously declared his intention to do so, and afterwards referred to his having given the slave to his daughter, this court held that this transaction lacked the essential constituent of delivery to make the gift complete, as the daughter was young, living with her father, and the slave remained with him.—*Sims v. Sims,* 2 Ala. 117. The case of *Blakey v. Blakey's Heirs,* 9 Ala. 391, went off on the point that the party claiming the gift failed to produce a deed of gift which he claimed to have, and that the declarations of the deceased were contradictory, and that it did not appear that he parted with the possession or the right to exercise control. In the case of *Hunley v. Hunley,* 15 Ala. 91, the slaves were worked on the farm of the children's father, in connection with those of the grandfather, who lived with his son, and the grandfather had frequently declared that he "had given them" to said grandchildren; that they belonged to them; and said grandfather and other members of the family frequently pointed them out as the slaves which he had given to said grandchildren. Said children frequently claimed said slaves as theirs, in the presence of their said grandfather, and it seemed to be generally recognized in the family that said slaves belonged to said grandchildren. The grandfather said he had given them to said grandchildren and intended to have a deed recorded to that effect. This court held that the transaction was wanting in the "essential ingredient to consummate the gift, namely, the delivery of the property." While the children's father had possession of the slaves, the court says there was "no evidence that they were delivered to him for any such purpose," and that such declarations ("that he had given the slaves to the children") "cannot constitute a valid gift, in the absence of proof of actual delivery."—15 Ala. 104. In the case of *Wheeler v. Glasgrow,* 97 Ala. 700, 11 South. 758, the certificate of deposit was endorsed and delivered to the donee,, and a witness testified that the donor used words of gift when he

handed the same to the donee.—97 Ala. 702, 11 South, 758. Other authorities hold that admissions, while admissible, are not sufficient to establish a completed gift. —14 Am. & Eng. Ency. Law (2d Ed.) p. 1051; *Rooney v. Minor*, 56 Vt. 527. And another case holds that, even where the donee was already in possession, there should be a delivery to him at the time of donation.—*Allen v. Allen* (Minn.) 77 N. W. 567, 74 Am. St. Rep. 442.

Realizing how easy it is, after the death of the supposed donor, to gather up detached expressions, particularly in the presence of interested witnesses, we recognize the wisdom of the rule that strict proof should be made of all the ingredients of a perfected gift before the same can be established. While in this case the proposed donee had possession of the paper, yet it is proved at the same time that he had all the other papers of the decedent in the same trunk, merely for safe-keeping, and, while it is not, in every sense, absolutely necessary that a note should be endorsed (to pass from one to another), yet it is significant in this case as a circumstance. In addition, it may be noted that even the declarations, such as they are, were contradictory. We hold that the evidence in this case was not sufficient to establish the gift, and the decree of the court is affirmed.

Affirmed.

WEAKLEY. C. J., and TYSON and ANDERSON, JJ. concur.