The plaintiffs, Daniel and Sabrina Rhodes, appeal from summary judgments entered in favor of the defendants, Chrysler Credit Corporation and General Motors Corporation.
The Rhodeses, husband and wife, purchased a 1989 Chevrolet Cavalier automobile from David Jones Chevrolet, Inc. ("Jones"). The car was manufactured and warranted by General Motors Corporation; Chrysler Credit Corporation financed the purchase. After the Rhodeses purchased the automobile, they returned it to Jones on three occasions for repairs. While Jones still had possession of the car after the third repair, Chrysler Credit repossessed it because of the Rhodeses' failure to make scheduled payments.
The Rhodeses filed an eight-count complaint against Chrysler Credit, General Motors, and Jones. They sought damages from General Motors and Jones for breach of warranty and sought compensatory damages from Chrysler Credit and Jones for wrongful repossession, conversion, fraudulent misrepresentation, and intentional infliction of emotional distress by extreme and outrageous conduct. Also, in Count VIII, they sought damages based on a claim that Chrysler Credit wrongfully reported the repossession and deficiency to a credit bureau. In the first amendment to their complaint, the Rhodeses added a demand against Jones and Chrysler Credit for punitive damages. In their second amendment, they sought damages against General Motors for mental anguish and suffering.[1] Finally, the Rhodeses amended their complaint a third time, seeking damages from General Motors and Jones for fraudulent misrepresentations they said occurred during the sale of the automobile.
Each of the defendants moved for a summary judgment. The trial court first granted a summary judgment in favor of Jones. Holding that "there is no genuine issue as to the liability of [the defendants], and that said defendant[s] [are] entitled to a judgment as a matter of law," the trial court later entered summary judgments in favor of Chrysler Credit and General Motors. It is from these judgments that the Rhodeses appeal.[2]
A summary judgment is proper when the motion and the materials submitted in support of it, and those submitted in opposition thereto, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), A.R.Civ.P. To defeat a properly supported motion for summary judgment, the nonmoving party must present substantial evidence to support its claims. Ala. Code 1975, § 12-21-12. To satisfy the "substantial evidence test," the nonmoving party is required to present "evidence of such weight and quality that fair-minded persons in the *Page 947 
exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). "[O]n review of a summary judgment, we must view all the evidence in a light most favorable to the nonmovant and we must entertain all reasonable inferences from the evidence in favor of the nonmovant." Lee v. City of Gadsden, 592 So.2d 1036, 1038
(Ala. 1992).
 I. Claims against General Motors
With regard to their claims against General Motors, the evidence, viewed in a light most favorable to the Rhodeses, shows the following: On July 13, 1989, the Rhodeses purchased a 1989 Chevrolet Cavalier from Jones. The Cavalier had been manufactured by General Motors. On the date of purchase, the odometer on the automobile registered 291 miles.
After purchasing the automobile, the Rhodeses returned it to Jones for repairs on three occasions. On August 9, 1989, Jones performed some touch-up painting on the car. On August 24, 1989, the Rhodeses brought the car back to Jones, complaining of noise in the transmission. At that time, Jones installed a new clutch, pressure plate, and throw out bearing. Finally, on September 26, 1989, the Rhodeses brought the car back to Jones, again complaining of noise in the transmission. At that time Jones removed the transmission from the car and shipped it to a company specializing in transmission repairs, and that company performed repairs on the transmission.
It is undisputed that General Motors paid for each of these repairs under the terms of the "New Car Limited Warranty" that applied to the car. Under the terms of that warranty, General Motors had agreed to cover repairs to correct any defect in materials or workmanship of the car for three years or 50,000 miles, whichever came first.
While Jones still had the car after the third repair, Chrysler Credit repossessed it because of the Rhodeses' failure to make scheduled payments. Except to the extent that they claim consequential damages as a result of having the car repaired, the Rhodeses make no claims against General Motors with regard to the repossession of the car. See footnote 1.
 A. The Breach of Warranty Count
In the first count of their complaint, the Rhodeses seek damages from General Motors for breach of the implied warranty of merchantability. Ala. Code 1975, § 7-2-314. General Motors asserts that it cannot be held liable under this theory because Jones, not General Motors, was the seller of the automobile.
We note that each section in the Uniform Commercial Code dealing with implied warranties places obligations on theseller of goods. In this case, General Motors was the manufacturer of the automobile, and Jones was the seller. §7-2-103(1)(d). In Wellcraft Marine v. Zarzour, 577 So.2d 414
(Ala. 1990), we stated: "There is no right of action on an implied warranty theory against a manufacturer for property damage without privity of contract." 577 So.2d at 419. (Emphasis in Wellcraft.) Similarly, we conclude that, without privity of contract, there is no right of action against a manufacturer for direct economic loss.[3]
The Rhodeses contend that in extending a written warranty, General Motors created privity of contract with the Rhodeses. When presented with a similar contention in Wellcraft, we held: "Regardless of any express warranties that a manufacturer may wish to give with a product, by their very language the commercial code's implied warranty sections apply to the seller
of the product." Id. at 419. *Page 948 
(Emphasis added.) We see no reason to disturb that holding in this case. Accordingly, as to the count alleging a breach of implied warranty, the summary judgment in favor of General Motors is affirmed.
In Count II of their complaint, the Rhodeses allege that General Motors breached its express written warranty. The written limited warranty provides that General Motors will pay for the costs of any repairs to the vehicle necessitated by defects in materials or workmanship during the applicable warranty period. It is undisputed that each time the Rhodeses brought the vehicle in for repairs, it was repaired and General Motors paid all charges for the repair. The Rhodeses produced no evidence that the September 26, 1989, repair failed to remedy the car's transmission problem.[4] There is no evidence that while the Rhodeses had possession of the car it ever stopped or failed to operate.
After considering the record and the parties' briefs, we conclude that the trial judge correctly held that the Rhodeses had failed to present substantial evidence in support of their breach of warranty claim. See, Belcher v. Versatile FarmEquipment Co., 443 So.2d 912 (Ala. 1983); Dickson v. U-JChevrolet Co., 454 So.2d 964 (Ala. 1984). Accordingly, as to the count alleging a breach of the express warranty, the summary judgment in favor of General Motors is affirmed.
 B. The Misrepresentation Count
In Count IX of their complaint as amended, the Rhodeses allege that General Motors represented to them that the car they were purchasing was new and was without defects. The Rhodeses do not allege that any specific representation to this effect was made to them. Rather, they claim that because General Motors supplied them with a "New Car Limited Warranty," General Motors was warranting that the car was new and was without defects.
The Rhodeses do not claim that the car had been previously owned, wrecked, or damaged or that it had any patent defects. Rather, they claim that the fact that the car had to be repaired three times after purchase is evidence that the car was not new and that it was defective.
In Tittle v. Steel City Oldsmobile GMC Truck, Inc.,544 So.2d 883 (Ala. 1989), we considered the application of a warranty that provided: "This warranty covers any repairs and needed adjustments to correct defects in material or workmanship."544 So.2d at 891. In that case, we concluded that rather than guaranteeing the car to be free of defects, the warranty actually anticipated that defects would arise and provided for remedying such defects. Id. Similarly, we conclude that the language in this warranty cannot be construed as a representation that the car was and would remain free of defects.[5]
Because the Rhodeses failed to present substantial evidence to support their claim that General Motors falsely represented that the car they purchased was new and without defects, we conclude that the trial court properly entered the summary judgment as to the misrepresentation count against General Motors. Accordingly, with regard to that count the summary judgment is affirmed.[6]
 II. The Claims against Chrysler Credit
With regard to the Rhodeses' claims against Chrysler Credit, the evidence, viewed in the light most favorable to the Rhodeses, shows: Chrysler Credit financed the Rhodeses' purchase of a 1989 Chevrolet Cavalier on July 13, 1989. The Rhodeses *Page 949 
entered into an installment purchase contract with Chrysler Credit, pursuant to which they agreed to make 60 payments of $335.96 each; and Chrysler Credit retained a security interest in the car. The first payment was due on August 12, 1989. On August 10, 1989, the Rhodeses forwarded a check for $335.96 to Chrysler Credit. That check was returned unpaid because of insufficient funds. The Rhodeses made no other payments under the installment contract.
On October 2, 1989, an agent of Chrysler Credit repossessed the vehicle from the premises of David Jones Chevrolet. On October 6, 1989, Chrysler Credit mailed to the Rhodeses a notice stating that the vehicle had been "voluntarily surrendered" and that it would be sold at a private sale after October 16, 1989. The letter informed the Rhodeses that they should contact Chrysler Credit by telephone or by mail if they had any questions. On October 16, 1989, the Rhodeses' attorney mailed a letter to Chrysler Credit demanding the return of the vehicle. Chrysler Credit did not respond to this letter. The car was sold on November 22, 1989, leaving a deficiency of over $3,000. Chrysler Credit reported the repossession and the resulting deficiency to a credit bureau.
Daniel and Sabrina Rhodes each submitted an affidavit in which they stated, "Based on conversations we had with David Jones Chevrolet, Inc., and Chrysler Credit Corporation, we were informed and believed that no payment had to be made toward the purchase of the automobile until such time as the defects in the automobile were repaired." Other than these statements in their affidavits, however, the Rhodeses presented no evidence that anyone at Chrysler Credit authorized the Rhodeses to withhold payments on the installment contract until the vehicle was repaired.
 A. The Fraud Count
The Rhodeses alleged that someone at Chrysler Credit told them that they did not have to make any payments under the installment contract until the car was finally repaired by Jones. They further alleged that this was a false representation and that they relied upon it to their detriment. The only evidence in support of this allegation is the statement quoted above from the Rhodeses' affidavits.
In support of its motion for summary judgment, Chrysler Credit submitted the testimony of Joe Rovira, its employee in charge of the Rhodeses' account. He testified that he was the only person who would have had a contract with the Rhodeses regarding their delinquency. He further testified that he did not authorize the Rhodeses to withhold payment until their car was repaired. We conclude, therefore, that Chrysler Credit made a prima facie showing that no genuine issue of material fact existed with regard to the Rhodeses' fraud claim. Lee,592 So.2d 1036.
In contrast, the only evidence submitted by the Rhodeses in opposition to the motion for summary judgment on this count is the conclusory statements in their affidavits. In opposing a motion for summary judgment, the nonmovants cannot merely rely on the allegations in their complaint. Nettles v. Henderson,510 So.2d 212 (Ala. 1987); Rule 56(e), A.R.Civ.P. Moreover, we have held that affidavits offered in opposition to a properly supported motion for summary judgment "must be more than a mere verification of the allegations contained in the pleadings, and must present facts that would be admissible in evidence." Blackv. Reynolds, 528 So.2d 848, 849 (Ala. 1988) (citing Morris v.Morris, 366 So.2d 676 (Ala. 1978)).
The materials submitted by the Rhodeses contain no particular evidence about the alleged conversation with Chrysler Credit. That is, they do not identify the party with whom they claim to have spoken, the approximate date of the alleged conversation, or the content of the alleged conversation. Based on this paucity of evidence, we conclude that the Rhodeses failed to present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer" *Page 950 
(West, 547 So.2d at 871) that a representative of Chrysler Credit actually informed the Rhodeses that they did not have to make payments under the installment contract until the car was repaired. Clearly, one of the essential elements of a fraud claim is that the defendant made a false representation.Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). Because the Rhodeses failed to present substantial evidence of this essential element of their claim, the trial court properly held that there was no genuine issue of material fact and that Chrysler Credit was entitled to a judgment as a matter of law. Rule 56(c)(3) and (e), A.R.Civ.P.
 B. The Conversion and Wrongful Repossession Claims
Ala. Code 1975, § 7-9-503, provides in relevant part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." With regard to collateral such as automobiles, § 7-9-504(3) provides that "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." We have held that selling collateral without satisfying the notice requirements of § 7-9-504(3) constitutes conversion. SimmonsMachine Co. v. M M Brokerage, Inc., 409 So.2d 743, 751 (Ala. 1981).
The Rhodeses argue that the notice Chrysler Credit sent to them failed to fulfil the purpose of § 7-9-504(3) and that the repossession of their car was wrongful and constituted conversion. Specifically, they point out that the notice stated that the car had been "voluntarily surrendered," whereas it was actually repossessed from the premises of David Jones Chevrolet.
We conclude that the notice at issue in this case clearly met the formal requirements of § 7-9-504(3) and fulfilled the purpose of that provision. We note, in the first place, that the Rhodeses concede in their brief that Chrysler Credit met the formal requirements of § 7-9-504(3). The notice must inform the debtor whether the sale of the collateral is to be private or is to be public. Lavender v. AmSouth Bank, N.A.,539 So.2d 193, 195 (Ala. 1988). In the case of a private sale, § 7-9-504(3) requires only "reasonable notification of the time after which any private sale is to be made." Id. See also, White and Summers, Uniform Commercial Code: Practitioner'sEdition, § 27-12 at 600-01. The notice in this case met these requirements.
The Rhodeses principally argue that the notice failed to fulfil the purpose of § 7-9-504(3). We disagree. In considering the sufficiency of notice in another case, the Court of Civil Appeals stated:
 "The purpose of the notice is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer, being present at the sale to bid on the property or have others do so, in order to keep from sacrificing the collateral at a secret sale at less than its true value."
Wells v. Central Bank of Alabama, N.A., 347 So.2d 114, 120
(Ala.Civ.App. 1977). See, Lavender, 539 So.2d at 195;Simmons, 409 So.2d at 749.
As stated above, Chrysler mailed the notice on October 6, 1989; the Rhodeses' attorney on October 16, 1989, mailed a letter demanding the return of the car; and the car was privately sold on November 22, 1989. It is undisputed that between October 16 and November 22 the Rhodeses made no attempt to bring their account with Chrysler Credit current. In fact, other than the October 16 letter, neither the Rhodeses nor their attorney had any further communication with Chrysler Credit until after the car was sold.
Considering the contents of the notice sent by Chrysler Credit, we reject the Rhodeses' contention that they were not informed that the car had been repossessed and that it would be privately sold. Even if the phrase "voluntarily surrendered" misstates the means by which Chrysler Credit took possession of the car, it is undisputed that the Rhodeses knew that *Page 951 
Chrysler Credit had, in fact, taken possession of it and that Chrysler Credit intended to sell it.
The Rhodeses make no other arguments in support of their claim for damages for conversion and wrongful possession. In light of our holding that the notice in this case complied with both the letter and the spirit of § 7-9-504(3), we conclude that as to the conversion and wrongful repossession claims the trial court properly granted Chrysler Credit's motion for summary judgment.
 C. The Outrage and Damage to Reputation Claims
In Count VII of their complaint, the Rhodeses allege that by engaging in extreme and outrageous conduct Chrysler Credit caused the Rhodeses to suffer severe emotional distress.See, American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980). The Rhodeses have failed to present any argument or to cite any authority in challenging the summary judgment on this count. Accordingly, as to this count the summary judgment is affirmed. Rule 28(a), A.R.App.P.
In Count VIII of their complaint, the Rhodeses seek damages from Chrysler Credit because, they claim, "in reporting this incident as a repossession to the credit bureau, [Chrysler Credit damaged] the credit rating and reputation of the Plaintiffs." The Rhodeses have failed to present any argument or to cite any authority in support of their claim that Chrysler Credit wrongfully engaged in conduct that harmed their reputation. Therefore, as to this claim also the summary judgment is affirmed. Rule 28(a), A.R.App.P.
 CONCLUSION
After considering the arguments and reviewing the record, we conclude that the trial judge properly entered the summary judgments for General Motors and Chrysler Credit. Accordingly, the judgments are affirmed.
AFFIRMED.
MADDOX, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
HORNSBY, C.J., concurs in the result.
[1] The Rhodeses contend that if the car had not been defective then the events leading up to the repossession of the car would not have taken place. Therefore, they sought damages from General Motors for the mental anguish and suffering they claim to have experienced because of the repossession of the car.
[2] The Rhodeses did not oppose Jones's motion for summary judgment; they do not appeal from the summary judgment in favor of Jones, and Jones is not a party to this appeal.
[3] An action for damages for physical harm to the plaintiff's property is one for "property damage"; and an action for damages for "inadequate value, costs of repair, and replacement of defective goods or consequent loss of profits is one for 'economic loss.' " James J. White and Robert S. Summers,Uniform Commercial Code: Practitioner's Edition, § 11-4 at 534 (3d ed. 1988).
[4] After Chrysler Credit repossessed the car, more warranty work was performed on the car. The brake cable was adjusted, and the cruise control cable was repaired and adjusted.
[5] The warranty in this case provides in relevant part: "REPAIRSCOVERED This warranty covers repairs to correct any defect in material or workmanship of the vehicle occurring during the WARRANTY PERIOD."
[6] Because we have concluded that the trial court properly entered the summary judgment in favor of General Motors on all of the substantive theories of liability, we see no need to address the Rhodeses' claim for damages for mental anguish and suffering.