CRAWLEY, Judge.
David Dudley is a professional bass fisherman. In March 1996, he was fishing in a tournament sponsored by the Bass Anglers Sportsman Society (B.A.S.S.) in Cor-sicana, Texas. He and some fellow fishermen visited a local tackle-and-bait shop during the tournament. Dudley apparently purchased some hooks or other fishing paraphernalia.
The owner of the tackle shop, Shane Trull, followed the tournament and saw Dudley at the next day’s weigh-in. He then telephoned Dewey Kendrick, the tournament director, and reported that Dudley, while in Trull’s tackle shop the night before, had received information on where to fish and on what the fish were biting. Having such information is a violation of B.A.S.S. rules.[1] Kendrick spoke to Dudley about the accusation, and, pursuant to B.A.S.S. rules, requested that Dudley undergo a polygraph examination. Dudley denied that he had received any information, but agreed to take the polygraph examination.
When Dudley arrived for the polygraph examination, he met first with Kendrick and Trull; Trull restated his allegations and positively identified Dudley as the person who had received the forbidden infor *137 mation. Dudley then voluntarily underwent the polygraph examination, which he failed. According to Kendrick, after being told that he had failed the polygraph examination, Dudley said that he probably had asked Trull about where to fish and what bait to use, that he had received the information, and that he was sorry he had done so. Dudley testified that he does not recall what was said after he took the polygraph examination, but stated that he did not receive any information prohibited by the rules. Kendrick disqualified Dudley from the tournament, on the basis of the polygraph examination.
Later, Kendrick learned that Shane All-man, a fisherman fishing in another tournament that week in Corsicana, may have requested the information from Trull. When questioned, Allman told Kendrick that he had requested information about where to fish and what bait to use from Trull. Allman took a polygraph examination, which indicated he was telling the truth about asking for the information in the tackle shop. Trull, however, insisted that he had not spoken with Allman, but instead continued to identify Dudley. Although Allman’s admission did not prove that Dudley did not receive the same information, Kendrick asked Dudley to take another polygraph examination to clear his name. Kendrick testified that, if Dudley had passed this examination, Kendrick would have rescinded the disqualification and Dudley would, have received his points and winnings. Dudley took the second polygraph examination, which he also failed. He stated to the examiner that he could not answer “yes” or “no” to the question whether he had committed a rule violation. Kendrick did not rescind the disqualification.
Dudley sued B.A.S.S. and Kendrick. He alleged, among other things, that B.A.S.S. and Kendrick were negligent or wanton in handling the investigation of Trull’s accusations and that Kendrick had slandered him by telling a reporter “I doubt if [Dudley] intentionally got this information to cheat. But he did get the information, and hopefully, he’ll learn from this mistake.” On their joint motion, the trial court entered a summary judgment for B.A.S.S. and Kendrick. Dudley appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038. “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See West, 547 So.2d at 871, and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary-judgment standard.

Negligence

Dudley signed an entry form for the Corsicana tournament. That form contained a release, which states, in part:
“I expressly assume all risks associated with the Tournament and I hereby release B.A.S.S., Inc., the host, sponsors and Tournament officials from all claims or injury and/or damage incurred in connection with this Tournament.”
*138 B.A.S.S. and Kendrick argue that this release entitles them to a summary judgment on Dudley’s negligence claim. Dudley argues that the release is ambiguous and that it was “short, small, and hidden” and is unenforceable. He also argues that it is contained in a contract of adhesion.
Whether a release is ambiguous is a question of law to be decided by the court. Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314, 316 (Ala.1993). As B.A.S.S. and Kendrick point out, the release language plainly releases them “from all claims or injury and/or damage” associated with Dudley’s participation in the tournament. We are not persuaded by Dudley’s argument that the release is ambiguous.
Nor are we persuaded by Dudley’s argument that the entry-form contract is a contract of adhesion and is therefore unenforceable. An adhesion contract has been defined as a consumer contract in which the consumer is left with no bargaining power and with no choice but to sign, in order to obtain the particular goods or service. See Northcom, Ltd. v. James, 694 So.2d 1329, 1337 (Ala.1997), dicta disapproved, Ex parte McNaughton, 728 So.2d 592, (Ala.1998). A more descriptive definition explains that an adhesion contract is one where:
“ ‘(1) The document whose legal validity is at issue is a printed form that contains many terms and clearly purports to be a contract.
“ ‘(2) The form has been drafted by, or on behalf of, one party to the transaction.
“ ‘(3) The drafting party participates in numerous transactions of the type represented by the form and enters into these transactions as a matter of routine.
“ ‘(4) The form is presented to the adhering party with the representation that, except perhaps for a few identified items (such as the price term), the drafting party will enter into the transaction only on the terms contained in the document. This representation may be explicit or may be implicit in the situation, but it is understood by the adherent.
“ ‘(5) After the parties have dickered over whatever terms are open to bargaining, the document is signed by the adherent.
“ ‘(6) The adhering party enters into few transactions of the type represented by the form — few, at least, in comparison with the drafting party.
“ ‘(7) The principal obligation of the adhering party in the transaction considered as a whole is the payment of money.’ ”
Roberson v. Money Tree of Alabama, Inc., 954 F.Supp. 1519, 1526 n. 10 (M.D.Ala.1997) (quoting Todd D. Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv. L.Rev. 1173, 1176-78 (Apr.1983)). Clearly, the above-quoted definition indicates that a contract of adhesion is, as our supreme court has explained, a consumer contract. The contract Dudley entered into voluntarily in order to compete in a B.A.S.S. fishing tournament is not an adhesion contract because it is not a consumer contract and Dudley’s major obligation under that contract was not to pay money (although he was required to pay an entry fee for the tournament), but instead consisted of his participating in the tournament and obeying B.A.S.S. rules while doing so. Therefore, based on the release, we affirm the summary judgment insofar as it relates to the negligence claim.

Wantonness

Dudley argues that the summary judgment for B.A.S.S. and Kendrick was improper as to his wantonness claim. He argues that the evidence demonstrates that they wantonly conducted the investigation of the cheating accusation lodged against him by Trull and that, despite learning that Allman was the one who had sought the prohibited information, they chose to uphold the disqualification.
*139 “To be guilty of wanton conduct, one must, with reckless indifference to the consequences, consciously and intentionally do some wrongful act or omit some known duty, and to be actionable, that act or omission must produce the plaintiffs injury.” Smith v. Davis, 599 So.2d 586, 588 (Ala.1992) (emphasis added). Dudley does not clearly indicate what duty B.A.S.S. or Kendrick owed to him. Apparently, he believes they owed him a duty to conduct a “reasonable” investigation of the accusations made against him. However, Dudley presented no evidence indicating that Kendrick should have done anything differently, other than his own opinion, informed by hindsight, that Kendrick made several mistakes in the investigation. Dudley specifically argues that Kendrick made mistakes after the disqualification and that Kendrick should have interviewed Trull’s father, who was also in the tackle shop that day, and that Kendrick should have informed Dudley earlier of Allman’s situation.
The B.A.S.S. rules and regulations indicate that the tournament director, in this case, Kendrick, has final authority over decisions involving rules violations. After receiving the accusation, Kendrick questioned Trull, confronted Dudley privately, brought Trull and Dudley together to make certain that the person Trull had accused was indeed Dudley, and conducted a polygraph examination before disqualifying Dudley. After receiving the information about Allman, Kendrick had Allman take a polygraph examination about the events at Corsicana. After Allman passed the polygraph examination, Kendrick had Dudley take a second polygraph examination, which, according to Kendrick, would have been a basis for rescinding the disqualification, had Dudley passed it.
Based on the rules and regulations governing B.A.S.S. tournaments, which Dudley was aware of and agreed to abide by, the tournament director has complete discretion over the investigation of, and punishment for, rules violations. He is the final authority on these matters. Kendrick had Dudley take the polygraph examination, which the rules require each participant to do if accused of a rule violation. Dudley failed that test. Kendrick could have chosen to disregard the test result; he chose instead to disqualify Dudley based on his failure. Dudley has no recourse under the rules, and we fail to see how he has a cause of action against B.A.S.S. and Kendrick for wantonness for the failure to perform a more in-depth investigation, including questioning more potential witnesses, when it was not required by those rules and when Dudley had already admitted receiving the information.

Slander

In support of the joint motion for summary judgment, Kendrick presented, among other things, selected portions of Dudley’s deposition testimony, selected portions of Kendrick’s deposition testimony, and the reports of both polygraph examinations. In opposition to that motion, Dudley presented, among other things, his entire deposition. Kendrick testified that Dudley had admitted, after the first polygraph examination, that he had received forbidden information during the Corsica-na tournament. He also testified that Dudley said he was sorry and that he had made a mistake. When questioned about the statements he allegedly made to Kendrick and the polygraph examiner after the first polygraph examination, Dudley’s testimony was that he did not remember what was said, but that he knew that he did not “do it,” apparently referring to the allegation that he violated B.A.S.S. rules during the Corsicana tournament.
The tort of defamation involves the protection of the “reputation and good name” of the plaintiff. Michael L. Roberts & Gregory S. Cusimano, Alabama Tort Law, § 24.0, 831 (1996).
“The foundation of an action for libel or slander is a malicious injury to reputation, and any false and malicious imputation of crime or moral delinquency by *140 one published of and concerning another, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation, is actionable either per se or per quod.... ”
Marion v. Davis, 217 Ala. 16, 18, 114 So. 357, 358-59 (1927). A defamatory comment is one that “ ‘tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.’ ” Harris v. School Annual Publ’g Co., 466 So.2d 963, 964 (Ala.1985) (quoting Restatement (Second) of Torts § 559 (1976)).
“ ‘The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence; and 4) either actionability of the statement irrespective of special harm [(per se)] or the existence of special harm caused by the publication of the statement [(per quod)].’ “
Drill Parts & Service Co. v. Joy Mfg. Co., 619 So.2d 1280, 1289 (Ala.1993) (quoting McCaig v. Talladega Publ’g Co., 544 So.2d 875, 877 (Ala.1989)).
Kendrick testified that Dudley had admitted getting the information at the tackle shop, so Kendrick contends that he met his burden of showing that the statement he made to the reporter — “I doubt if [Dudley] intentionally got this information to cheat. But he did get the information, and hopefully, he’ll learn from this mistake.” — was not false. Kendrick argues that Dudley did not present substantial evidence creating a question of fact about the falsity of the statement. Dudley’s deposition testimony indicates he does not remember what was said at the tackle shop or what was said after his polygraph examination. He does, however, state “[B]ut I know I didn’t do it.”
The Alabama Supreme Court has discussed when a statement by a party opposing a summary-judgment motion is sufficient to create a fact question. In Rhodes v. General Motors Corp., Chevrolet Div., 621 So.2d 945, 949-50 (Ala.1993), the court discussed whether the affidavits of the Rhodeses, the plaintiffs in a fraud and conversion case, submitted in opposition to a summary-judgment motion, were substantial evidence sufficient to defeat that motion. The Rhodeses had stated in their affidavits that the credit company had informed them that they did not have to make payments on the automobile they had purchased until the automobile had been repaired. Rhodes, 621 So.2d at 949. The credit company had presented the testimony of its employee in charge of the Rhodeses’ account. Id. He testified that he was the only person who would have dealt with the Rhodeses and that he had not authorized them to withhold payment. Id. The court determined that the conelu-sory statements in the Rhodeses’ affidavits were insufficient to defeat the motion for summary judgment. Id. at 949-50. In fact, the court said that the affidavits “contain[ed] no particular evidence about the alleged conversation” with the credit company and noted that the Rhodeses failed to identify who they spoke with, the approximate date of the conversation, or the content of the conversation. Id. at 949.
We agree with Kendrick that Dudley’s statement “[B]ut I know I didn’t do it” is not substantial evidence creating a fact question about the truth or falsity of the statement. Like the Rhodeses’ statements to the effect that they had been advised not to make payments, Dudley’s statement to the effect that he did not violate the B.A.S.S. rules is not supported by any factual assertions. Dudley’s categorical denial is clearly conelusory, especially in light of his testimony that he does not recall any details about the conversations that took place in the tackle shop or after the first polygraph examination. It simply does not constitute substantial evidence, *141 see id.; therefore, the summary judgment on his slander count is affirmed.
AFFIRMED.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result only.

. The rules read, in part: "[A] competitor may not have the assistance or advice of anyone for the purposes of locating or catching bass.”