MURDOCK, Justice
(concurring in the result).
I concur in the result reached by the main opinion in both case no. 1091798 and case no. 1100247. I write separately as to case no. 1091798 to express my concern regarding the state of our law with respect to undue influence and conversion and to note my reason for agreeing with the result reached by the main opinion as to the fraud claim.

Undue Influence

By 1977, if not before, our cases had begun to speak in terms of three distinct elements that, if proven, would aid a will contestant by giving rise to a presumption of undue influence, thereby shifting the burden of proof to the proponent of the will to establish that the will was the free act of the testator. In Pruitt v. Pruitt, 343 So.2d 495, 499 (Ala.1977), this Court stated:
“Our cases have consistently held that when undue influence is asserted in a will contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will.”
343 So.2d at 499 (citation and original emphasis omitted and emphasis added).[3] As *672 indicated in cases such as Pruitt, however, the “elements” necessary to give rise to a presumption of undue influence and to shift the burden of proof are one thing; the definition of undue influence is another.
Not unexpectedly, as Pruitt explained, if a contestant is able to prove those elements for purposes of creating that presumption, he or she will have “go[ne] far, of course, in proving the principal charge of undue influence.” 343 So.2d at 499. That “principal charge,” i.e., the wrongdoing known as “undue influence,” was itself defined at common law and in our cases as simply this: the assertion of such “ 'influence ... as, in some measure, destroys the free agency of the testator, and prevents the exercise of that discretion which the law requires a party should possess as essential to a valid testamentary disposition of his property.’ ” Id. (quoting the well established definition of undue influence stated over 20 years earlier in Locke v. Sparks, 263 Ala. 137, 140, 81 So.2d 670, 673 (1955)). As this Court indicated in the 1861 case of Hall’s Heirs v. Hall’s Executors, 38 Ala. 131, 134 (1861), what is necessary to demonstrate undue influence is simply a showing “that an influence was exerted upon the mind of the testator, which was equivalent to moral coercion, and constrained him to do that which was against his will, but which, from fear, the desire of peace, or some other feeling than affection, he was unable to resist.” Black’s Law Dictionary 1666 (9th ed.2009) defines “undue influence” in relation to a will as simply “[c]oercion that destroys a testator’s free will and substitutes another’s objectives in its place” and then notes that “a presumption of undue influence” (emphasis added) may arise “based on the confidential relationship between the influ-encer and the person influenced” “[w]hen a beneficiary actively procures the execution of a will.” See also 36 Am.Jur. Proof of Facts 2d 109 Undue Influence in Execution of Will § 2 (1983)(discussing the elements of a claim of undue influence); 36 Am.Jur. Proof of Facts 2d 109 Undue Influence in Execution of Will § 7 (1983)(discussing the elements for establishing a presumption of undue influence).
The failure of our cases since Pruitt to maintain the distinction between the elements of undue influence and the factors giving rise to a presumption of undue influence leads to confusion, as I believe it has in the present case, and could, in a given case, lead to an unjust result. For example, element (1) as now articulated requires the contestant to establish “ ‘a confidential relationship between a favored beneficiary and the testator.’ ” Furrow v. Helton, 13 So.3d 350, 353 (Ala.2008) (quoting Clifton v. Clifton, 529 So.2d 980, 983 (Ala.1988)). Laying aside the even more fundamental issue of why we should require the relationship to be a “confidential” one, it would seem that what should be required is that there be a confidential relationship between the party exerting the influence and the testator, and not between the “favored beneficiary” and the testator. Indeed, it appears that more recent cases have confused the factors that may be shown in order to create a presumption of undue influence (thereby shifting the burden of proof) with what it means simply for a testator to have been unduly influenced and that these cases have sub silentio overruled earlier cases *673 such as Little v. Sugg, 243 Ala. 196, 212, 8 So.2d 866, 881 (1942). In Little, this Court clearly explained: “If a will is procured by undue influence, it is not essential that the beneficiary participated in thus procuring it. If it is so procured, the animus testandi [testamentary intention] is absent, regardless of who may be the guilty agent" In fact, element (2), as quoted above from Pruitt, appears to acknowledge this distinction with its reference to “influence of or for the beneficiary.” 343 So.2d at 499. Why would a will be any less the result of undue influence (i.e., why would the testator’s testamentary intention be any less unduly interfered with) simply because a party unduly influenced the testator to leave property to some person or entity other than the party exerting the undue influence?
Similarly, as to element (3), I question why we should impose a strict requirement of direct involvement in the physical preparation of the will or the logistics or mechanics of its execution. Not unlike a party who obtains favorable terms in a will by committing fraud on the testator, could not someone be guilty of unduly influencing a testator to change his or her will without being directly involved in the ensuing mechanics of hiring a lawyer, obtaining witnesses, etc.? The main opinion states:
“Circumstances evidencing undue activity in the procurement or execution of a will are those where a beneficiary
“ ‘ “ ‘was acting in and about the execution and preparation of said will such as the initiation of the proceedings for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witnesses, excluding persons form the testatrix at or about the time of the execution of the will, concealing the making of the will after it was made, and the like....””
“Reed v. Shipp, 293 Ala. 632, 636, 308 So.2d 705, 708 (1975) (quoting appellants’ brief, quoting in turn Lewis v. Martin, 210 Ala. 401, 413, 98 So. 635, 647 (1923)). There was insufficient relevant evidence of such activity in this case.”
91 So.3d at 664. Until relatively recently in our history, the essence of undue influence that would serve to invalidate a will was, as stated above, the exertion of such influence as “ ‘destroys the free agency of the testator.’ ” Pruitt, 343 So.2d at 499 (quoting Locke). I am at a loss as to why undue influence does not exist whenever a testator’s free will has in this manner been overcome and, in consequence of that fact, the testator then handles on his or her own the physical mechanics associated with preparing and executing the will without any further involvement by the “influencer.” Again, see Little, supra.
We are not asked in this case, however, to revisit the manner in which our cases articulate the three elements of undue influence as stated in Furrow. Accordingly, like the rest of the Court, I review the issues presented within the framework of those elements. In so doing, I concur in the result reached as to the claim of undue influence in this case because I do not see in the record before us “substantial evidence” to support such a claim.[4]

*674
The Fraud Claim

I concur in the result achieved by the main opinion as to Jack’s fraud claim because I do not find in the record substantial evidence of a missing will.

The Conversion Claim

If the Dead Man’s Statute were still “alive” in this State, the issue presented as to the alleged inter vivos gifts from Mrs. McGee to Jack likely would not be before us. See § 12-21-163, Ala.Code 1975 (Dead Man’s Statute);[5] see also Schoenvogel v. Venator Group Retail, Inc., 895 So.2d 225, 258 (Ala.2004) (“The Alabama Dead Man’s Statute, § 12-21-163, Ala. Code 1975, has been superseded by Rule 601, Ala. R. Evid.”); Rule 601, Ala. R. Evid. (“Every person is competent to be a witness except as otherwise provided in these rules.”). For example, in Brooks v. Ward, 287 Ala. 609, 614, 254 So.2d 175, 178-79 (1971), which involved an attempt after the death of an alleged donor to prove an inter vivos gift of property in which the estate had an interest, this Court stated:
“In our consideration of this appeal we have not overlooked the possible effect of [the] ... Dead Man’s Statute ... in rendering incompetent the testimony of Loyd and Hazel Ward pertaining to the statement of Mr. Brooks concerning the gift or the release of the note.
“The fact that the Wards had a pecuniary interest in the outcome of the suit, and the further fact that Mr. Brooks’ estate would be affected by the suit, would seem to place the competency of the Wards as witnesses squarely within the terms of [the Dead Man’s Statute].
“... [N]either the Chancellor nor this court can consider that part of the testimony of Mr. and Mrs. Ward which is within the exclusionary rule of [the Dead Man’s Statute].”
See, e.g., Livingston v. Powell, 257 Ala. 38, 42, 57 So.2d 521, 523 (1952). The effective repeal of the Dead Man’s Statute, however, has now made possible the dispute before us in that it has made possible the use of testimony of the alleged donee following the death of the alleged donor in support of a claim of an inter vivos gift of property in which the deceased donor’s estate has an interest.
The elements of a gift are “1) [a]n intention to give and surrender title to, and dominion over, the property; 2) [d]elivery of the property to the donee; and 3) [acceptance by the donee.” Dial v. Dial, 603 So.2d 1020, 1022 (Ala.1992) (emphasis omitted). Further, proof of a gift must be *675 accomplished by “clear and convincing evidence.” See, e.g., First Alabama Bank of Montgomery v. Adams, 382 So.2d 1104, 1111 (Ala.1980); DeMouy v. Jepson, 255 Ala. 337, 339, 51 So.2d 506, 508 (1951). Also, the delivery required for a gift must by an actual, physical delivery, unless the property is not susceptible of such delivery. See Garrison v. Grayson, 284 Ala. 247, 250, 224 So.2d 606, 608-09 (1969).
Nevertheless, this Court has recognized that delivery of a gift might be shown even where the donor maintains or subsequently regains some physical control over the gifted property:
“A gift of securities may be sustained where, after delivery, they are placed in a safe to which both donor and donee have access, or in a safety deposit box rented by the donee, and to which the donor has access by authority of the donee.... But this only contemplates storage after delivery. We doubt not however that a delivery may be effected by the donor placing the securities in such box with the mutual understanding that thereby their oumership, custody, control, management and use completely pass to the donee, who also accepts them as his own.”
Livingston, 257 Ala. at 43, 57 So.2d at 524-25 (final emphasis added). See also 38 Am.Jur.2d Gifts § 27 (2010):
“A donor’s retention of actual physical possession of personal property will not necessarily negate a finding that the donor has made a gift of the property. Where good reason exists for the physical retention by the donor of the subject matter of a gift, a good delivery can be shown by other circumstances. Moreover, if a gift has been fully executed, the return of the property by the donee to the donor for a purpose not inconsistent with the gift will not render the gift invalid.”
(Footnotes omitted and emphasis added.)
As to the issue of property in the possession of a decedent at the time of his or her death, Willis asserted in his summary-judgment motion that allegedly gifted property that is in the possession of a decedent is “regarded as part of the decedent’s estate as a matter of law.” Standing alone, this assertion is not a correct statement of law. Only a rebuttable presumption is established by the fact of possession by the decedent at the time of death:
“Personal property found in one’s possession or under his dominion and control at the time of his death is presumed to belong to him and to constitute assets of his estate; but this presumption is of course rebuttable by evidence appropriate and competent to show that such property did not belong to the decedent and was not an asset of his estate.”
Sewell v. Sewell, 199 Ala. 242, 243-44, 74 So. 343, 344 (1917) (emphasis added).
Further, I would note that whether Jack ever took physical delivery of the items in question from Mrs. McGee before she died is a factual issue. Delivery is one of the factual elements of a gift. Thus, in addressing this issue, Jack’s affidavit does address a factual issue, and not a question of law or an “ultimate conclusion” as the main opinion suggests.[6] Further, Jack’s affidavit is more than conclusory to the extent that it does list three particular items of which, according to the affidavit, Jack physically took possession before his mother died and then explains that he had returned these items to her for safekeep *676 ing and the reason he had done so, i.e., that his own house was being remodeled. In short, I cannot agree to characterize Jack’s affidavit as merely “conelusory statements ... ‘not supported by any factual assertions’ ” as urged by Willis (citing Dudley v. Bass Anglers Sportsman Society, 777 So.2d 135, 140 (Ala.Civ.App.2000)), given the fact that the statements regarding this matter found in Jack’s affidavit are, themselves, “factual assertions.”[7] Any lack of additional details in testimony of this nature normally would go to the credibility and weight determinations to be made by the fact-finder at trial rather than to the competence of the evidence.
Nonetheless, the standard of proof in circumstances such as this is demanding. In Thomas v. Tilley, 147 Ala. 189, 195, 41 So. 854, 855 (1906), we find this expression of the rule:
“Realizing how easy it is, after the death of the supposed donor, to gather up detached expressions, particularly in the presence of interested witnesses, we recognize the wisdom of the rule that strict proof should be made of all the ingredients of a perfected gift before the same can be established.”
(Emphasis added.) Further, in Davis v. Wachter, 224 Ala. 306, 309, 140 So. 361, 363 (1932), this Court stated:
“With respect to the burden of proof, we are primarily concerned with the rule that one claiming as donee must carry that burden by clear and convincing proof, and when the gift is inter vivos, and the donee makes no assertion of ownership until after the death of the *677 donor, the same measure and character of proof is required as when it is causa mortis.”[8]
(Emphasis added.)
Unfortunately for present purposes, and no doubt owing to the salutary effect of Alabama’s Dead Man’s Statute until the adoption of Rule 601 effective January 1, 1996, there is little Alabama caselaw explaining what “measure and character” of testimony from a donee is sufficient to satisfy the “strict proof’ “clear and convincing” evidentiary standard in regard to physical delivery and other elements of an inter vivos gift first claimed by the donee after the death of the donor.
That said, and without attempting to articulate a more precise rule for general application at this juncture, I am comfortable with a conclusion today that the “measure and character” of the required proof must be greater than that presented in the case before us. If the law found sufficient evidence no more compelling than that presented here, it would risk the injection of much uncertainty and confusion in regard to testamentary dispositions, an area where the common law and our legislature have attempted to impose requirements intended to produce certainty and order. See Benson v. Jefferson Mortg. Co., 276 Ala. 72, 75, 159 So.2d 191, 193 (1968) (“£ “Gifts causa mortis ought not to be encouraged.... It is far better that occasionally a gift of this kind should fail than that the rules of law be so relaxed as to encourage fraud and perjury.” ’ ” (quoting Smith v. Eshelman, 235 Ala. 588, 592, 180 So. 313, 317 (1938) (Gardner, J., dissenting)); Reedy v. Kelley, 206 Ala. 132, 133, 89 So. 275, 277 (1921) (“‘Too much care cannot be taken, in insisting on the most convincing evidence in cases of this kind [involving gifts causa mortis]; for these donations do in effect amount to a revocation pro tanto, of written wills; and, not being subject to the forms prescribed for nuncupative wills, they are certainly of a dangerous nature.’ ” (quoting Wells v. Tucker, 3 Binn (Pa.) 366, 370 (1811)); 38 Am Jur.2d Gifts § 79 (2010) (“The requirement of clear and convincing proof of a gift pertains with even greater force where the gift, whether inter vivos or causa mor-tis, is not asserted until after the death of the alleged donor, in view of the possibility of fraud or pretension in such a case.” (footnotes omitted and emphasis added)); 38 Am Jur.2d Gifts § 84 (2010) (“[E]vi-dence adduced to establish title to property through an inter vivos gift, as against the estate of a decedent, must be of great probative force. Furthermore, the evidence required to establish a gift causa mortis may be greater than that needed to prove an inter vivos gift.” (footnotes omitted)).[9]
*678 Finally, I have an additional measure of reluctance to reverse the judgment of the trial court on this conversion claim stemming from the fact that to do so would indicate that an affidavit of the nature here would be a sufficient basis from upon which a jury could conclude that a will contestant has “clearly and convincingly” proved a claim of conversion against an executor shouldered by law with the obligation to marshal and to secure the physical assets of the decedent pending judicial or other disposition of those assets.

. See also Jones v. Brooks, 184 Ala. 115, 120, *672 63 So. 978, 979 (1913) (“After the contestant makes out a case which would cast the burden upon the beneficiary, the beneficiary may overturn the presumption by proof of competent, independent advice and counsel, ‘or by any other evidence which satisfies the judicial conscience that the gift was the voluntary and well-understood act of the testatrix’s mind.’— Scarbrough v. Scarbrough, [185 Ala. 468, 478, 64 So. 105, 109 (1913)].” (emphasis added)).

. I also have some concern about the statement in the main opinion that “[ejvidence indicating that the testatrix had a post-execution discussion with a named beneficiary and gave him the will with instructions to ‘put it away for safekeeping’ does not constitute evidence of undue activity in the execution of the will.” 91 So.3d at 665. Although I agree that, in the context of the present case, that stated fact, standing alone, does not constitute meaningful evidence of undue influence, I would not agree that evidence of such post-execution involvement with the testator could not, in an appropriate case (e.g., here there is *674 other meaningful evidence of undue influence), contribute to a jury’s ability to infer from the evidence that such influence had in fact occurred. Cf. Reed v. Shipp, 293 Ala. 632, 636, 308 So.2d 705, 708 (1975) (noting that post-execution activity in "concealing the making of the will after it was made, and the like,” may be evidence of undue influence).

. Section 12-21-163, which was abrogated by this Court's adoption of Rule 601, Ala. R. Evid., states:
"In civil actions and proceedings, there must be no exclusion of any witness because he is a party or interested in the issue tried, except that no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding ..., unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another.”
(Emphasis added.)

. It appears to me that if Jack’s affidavit had simply stated that he "had received a gift” of the items in question, this would have been testimony as to the "ultimate conclusion.”

. Compare Restatement (Second) of Property: Donative Transfers % 31.1 (1992):
"d. Manifested intention of donor to make gift of entire interest in personal property to single donee. The proof that the personal property delivered by the donor is to an intended donee, or to a third person for an intended donee, must be found in legally admissible evidence. For example, the so-called dead man’s statute may prevent the use of oral statements made by the donor to the intended donee if the donor is dead at the time proof of what the donor intended is introduced (see Illustrations 3 and 5). The proof that is admissible, however, may relate to an intention the donor had before, at the time of, or after the deliveiy. The relationship of the parties involved may indicate that a gift from one to the other would be a normal expectation, and, if so, this circumstance contributes to the finding of an intent to make a gift. If the delivery is made to one on his or her birthday, this fact may justify a finding that a gift is intended. Any other circumstance in connection with the delivery that suggests the reason for the delivery is relevant in determining the intention of the donor to make or not to make a gift.
[[Image here]]
"[Illustration] 12. O has a diamond ring on her finger, and she takes it off and hands it to her daughter D, saying: ‘I
give this ring to you.’ The ring is too small for D, but it is recognized that the ring could be enlarged to fit D’s finger. O then says: 'Let me take it and wear it for a while longer, but it is your ring and you can have it whenever you want it.’ O dies and D demands the ring from O’s executor. If D’s testimony that O made the quoted statement is admissible and is believed, the conclusion is justified that the gift of the ring to D was completed when O handed D the ring. The return of the ring by D to O to allow O to wear it until D should request it did not terminate D’s acquired ownership. O's executor is required to deliver the ring to D."
(Emphasis added.) See also, e.g., Friend v. Morrow, 558 S.W.2d 780, 783-84 (Mo.Ct.App. 1977) (involving inter vivos gift and deceased donor and stating: "The return of the subject matter of a completely executed gift by the donee to the donor for a purpose not inconsistent with the gift, such as safekeeping, will not render the gift invalid.”); Rogers v. Rogers, 271 Md. 603, 608, 319 A.2d 119, 122 (1974) (involving inter vivos gift and deceased donor and stating: "Where an actual delivery to a donee occurs, a delivery back to the donor, where the donor is acting as the do-nee's agent for a limited purpose, does not impair the validity of the gift.”).

.
" 'A gift causa mortis is a gift of personal property made in the immediate apprehension of death, subject to the conditions, expressed or implied, that if the donor should not die, as expected, or if the donee should die first, or if the donor should revoke the gift before death, the gift should be void' (14 Am. & Eng. Ency. Law [2d Ed.] 1052); or a gift made 'in expectation of death, then imminent, and upon the essential condition that the property shall belong fully to the donee, in case the donor dies, as anticipated, leaving the donee surviving him, and the gift is not in the meantime revoked, but not otherwise.’ 20 Cyc. 1228.
"It is essential to the validity of a gift causa mortis that the property be delivered to the donee, either actually or constructively.”
Barnes v. Barnes, 174 Ala. 166, 168-69, 56 So. 958, 959 (1911).

. Compare Thomas v. Tilley, 147 Ala. at 195, 41 So. at 855:
“While in this case the proposed donee had possession of the paper, yet it is proved at the same time that he had all the other papers of the decedent in the same trunk, *678 merely for safe-keeping, and, while it is not, in every sense, absolutely necessary that a note should be indorsed (to pass from one to another), yet it is significant in this case as a circumstance. In addition, it may be noted that even the declarations, such as they are, were contradictory. We hold that the evidence in this case was not sufficient to establish the gift, and the decree of the court is affirmed.”